Jasen, J.
 

 Appellants, tenants in an apartment building governed by the Rent Stabilization Law of 1969' (RSL) (Local Laws, 1969, No. 16 of City of New York; Administrative Code of City of New York, ch. 51, tit. YY) have been denied renewal leases because of the existence of a Plan of Cooperative Organization for the building, which provides for converting it from rental units to co-operative ownership. Seeking to remain as tenants, they commenced this proceeding pursuant to CPLR article 78.
 

 The material facts are not in dispute. On April 24, 1969, the Attorney-General accepted for filing, pursuant to section 352-e of the General Business Law, an offering plan of co-operative reorganization of the premises known as 315 West 70th Street, which had been submitted by the sponsor of the plan, respondent Praetorian Realty Corporation (Praetorian). Pursuant to this
 
 *189
 
 plan, respondent Invesco Holding Corporation would transfer its fee title to the property to Presidential Towers Residence, Inc. (Presidential), and Praetorian would transfer its leasehold interest in the property, in addition to its right of purchase under a contract with Invesco, to Presidential. Shares in Presidential would then be allocated to each individual dwelling unit and individuals who purchase the shares would become shareholders of Presidential, as well as proprietary lessees of the respective apartments. The plan was to become effective when agreements for the purchase of 75% of the shares allocated were secured. Praetorian, however, reserved the option to declare it effective when agreements for the purchase of 35% of such shares, accompanied by the required downpayments, were received.
 

 On May 6, 1969, the RSL became effective. Unlike the Rent and Rehabilitation Law of 1962 (Administrative Code of City of New York, ch. 51 tit. Y), the new law instituted controls on the subject property. With respect to renewal of leases in situations where conversion to co-operative ownership is contemplated, the RSL provided that an owner could not refuse to renew a lease except when he had filed a plan for conversion to co-operative or condominium ownership with the Attorney-General, and the conversion plan included a provision that ‘
 
 ‘
 
 the tenants in occupancy shall have the exclusive right to purchase théir dwelling units for a period of ninety days from the date of mailing of the offering plan to such tenants, and at least fifteen percent of them agree to purchase cooperative shares or title to their dwelling units ” (§ YY51-6.0, subd. c, par. [9]).
 

 Paragraph (9) of subdivision c of section YY 51-6.0 of the RSL was subsequently amended by^ Local Laws, 1969, No. 50 of City of New York (eff. Sept. 25, 1969) as a result of which the requirement that a sufficient number of tenants agree to purchase shares in the co-operative was increased from 15% to 35%. With respect to the question of how the 35% figure was to be calculated, the amendment states that such a plan may not be declared effective ‘ ‘ unless and until thirty-five percent of the tenants then in occupancy ” agree to join in the plan. (§ YY516.0, subd. c, par. [9], cl. [a].)
 

 
 *190
 
 In order to conform the Beal Estate Industry Stabilization Code to the above amendment
 
 [1]
 
 , respondent Beal Estate Industry Stabilization Association (Association) submitted to respondent City Housing and Development Administration (HDA) a proposed amendment which provided that, in meeting the 35% requirement, a sponsor may include all purchases of apartments that became vacant after the plan was presented. This amendment was approved by the HDA and incorporated in the Industry Code. (Code of the Real Estate Industry Stabilization Association of New York City, § 61, subd. 4, par. [a], cl. [ii].)
 

 In the fall of 1969, Praetorian was advised by both the Attorney-General and the HDA that it must comply with the provisions of the code in order .to secure the Approval of its plan. Although it was of the opinion that its plan was exempt from the BSL, Praetorian filed with the Attorney-General an amendment which provided that the plan would become effective when 35% of the tenants had made purchases under it, including “ All purchases of apartments, that became, vacant after April 26,1969, the date when the Plan was presented ”. This amendment was accepted by the Attorney-General.
 

 On October 13, 1970, another amendment was filed with the Attorney-General. This consisted of a declaration of effectiveness wherein it was announced that the requisite 35% of the tenants had purchased shares.
 
 [2]
 
 After this amendment was accepted, a copy of it was mailed to all tenants and purchasers. Additionally, written notice that the closing was set for December 10,1970, was sent.
 

 In their petition, appellants raised two principal issues. They contended that section YY51-6.0 (subd. c, par. [9], cl. [a]) of the BSL, pursuant to which their landlord refused to execute renewal leases, is unconstitutional. The argument is that the
 
 *191
 
 statute denies them due process because it makes their right to renewal leases subject to abrogation by a minority of the tenants. Appellants’ other contention was that, assuming the constitutionality of this statute, the HDA acted" arbitrarily in approving section 61 (subd. 4, par. [a], cl. [ii]) of the Industry Code; The claim of arbitrariness is based on the argument that since this section permits sponsors of co-operative plans to include in the requisite 35% purchases of apartments those apartments that became vacant after the co-operative plan was presented, it conflicts with the RSL, which requires approval of 35% of the tenants in occupancy when the plan was presented.
 

 Special Term dismissed the petition. It held that the constitutional issue could not be determined in the instant proceeding
 
 “
 
 particularly where, as here, the petitioners are relying on the very law as the basis for their challenge to the administrative determination in question.” As to the other issue, the court ruled that the challenged Industry Code section was not invalid since it was approved by .the HDA ‘ ‘ in accordance with the clear and unambiguous language, as well as the intention, of the [RSL].” On appeal, the Appellate Division unanimously affirmed, without opinion.
 

 We agree with the determination below and concur with the views expressed by Special Term, except to the extent that it failed to address itself to the constitutional issue presented. In our opinion, the constitutional issue is cognizable in the instant proceeding, and, consequently, Special Term should have addressed itself to that issue.
 

 Preliminarily, we must determine the appropriateness of the article 78 procedure employed by the appellants to challenge the statute’s constitutionality. While an article 78 proceeding is generally the proper vehicle to determine whether a statute, ordinance, or regulation has been applied in an unconstitutional manner
 
 (Matter of Overkill Bldg. Co.
 
 v.
 
 Delany,
 
 28 N Y 2d 449, 458), the rule is different when the issue is the constitutionality of legislative action. We have consistently held that a proceeding under article 78 is not the proper vehicle to test the constitutionality of legislative enactments.
 
 (Matter of Gold
 
 v.
 
 Lomenzo,
 
 29 N Y 2d 468, 476, n. 4;
 
 Matter of Overkill Bldg. Co.
 
 v.
 
 Delany,
 
 28 N Y 2d 449, 458, supra;
 
 Matter of Lakeland
 
 
 *192
 

 Water Dist.
 
 v.
 
 Onondaga County Water Auth.,
 
 24 N Y 2d 400, 407;
 
 Golden
 
 v.
 
 Planning Bd. of Ramapo,
 
 37 A D 2d 236, 238-239, revd. on other grounds 30 N Y 2d 359; see, also, 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7801.02.) Consequently, an article 78 proceeding is not the proper form for raising appellants’ attack on the statute in question.
 

 This does not mean, however, that the issue is not cognizable in the instant proceeding. Rather, since it is not questioned that all necessary parties are before the court, Special Term, pursuant to CPLR 103 (subd. [c]) should have treated the instant proceeding as an action for a declaratory judgment seeking to test the constitutionality of the afore-mentioned section of RSL, and proceeded accordingly.
 
 (Matter of Lake-land Water Dist.
 
 v.
 
 Onondaga County Water Auth.,
 
 24 N Y 2d 400, 408-409,
 
 supra;
 
 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 103.08; Practice Commentary by Joseph M. McLaughlin, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 103, p. 17.) Thus, Special Term erred in failing to address itself to this issue.
 

 Respondents suggest that our decision in
 
 Matter of Diocese of Rochester
 
 v.
 
 Planning Bd.
 
 (1 N Y 2d 508) compels a contrary qonclusion. In that case (p. 519), we recognized the “ general rule that a party cannot, in the same proceeding, rely upon a statute or retain benefits thereunder and attack its constitutionality ”. However, inasmuch as CPLR 3017 (subd. [a]) provides that “ [rjelief in the alternative or of several different types may be demanded ”, the general rule recognized in
 
 Matter of Diocese of Rochester
 
 (1 N Y 2d 508, supra) is no longer viable. Consequently, appellants ’ request for a complete adjudication of all their claims was proper.
 

 In sum, the constitutional issue raised by the appellants is cognizable in the instant proceeding, and the court below erred in refusing to address itself to it. Needless to say, this decision is in harmony with the evolution of the law in this area (see, e.g.,
 
 Matter of Gold
 
 v.
 
 Lomenso,
 
 29 N Y 2d 468,
 
 supra; Matter of Lakeland Water Dist.
 
 v.
 
 Onondaga County Water Auth.,
 
 24 N Y 2d 400,
 
 supra)
 
 and consistent with its teaching that the courts should not become involved in drawing fine lines of distinction in characterizing the form in which relief is sought.
 
 *193
 
 Rather, as aptly stated by Justice Hopkins, “ The true question is whether a cause for complaint has been stated; the form of the action or proceeding can [then] be molded by the court”.
 
 (Bloom
 
 v.
 
 Mayor of City of N. Y.,
 
 35 A D 2d 92, 97, affd. 28 NY 2d 952.)
 

 We do not find it necessary, however, to remand the case to Special Term. Since the corporation counsel and the other parties concerned with the co-operative plan have briefed the issue, it is proper for our court to consider and resolve it. (See Cohen and Karger, Powers of the New York Court of Appeals, § 167.)
 

 Appellants’ argument is premised on the contention that the RSL gives them the right to indefinite renewal of their leases and that this right cannot constitutionally be limited in the same law by a provision for conversion to co-operative ownership upon purchase by a minority (35%) of the tenants. Appellants ignore, however, the fact that prior to the passage of the RSL, they possessed no rights at all to renewal leases, and that the enactment of the RSL granted them only certain limited rights. Included is the right to the renewal of leases, subject, however, to an exception where a plan for conversion has been presented, effective upon the purchase by a certain number of tenants. The law, thus, does not arbitrarily limit a more extensive right, but, rather, grants to tenants a limited right which they previously did not have. Appellants, therefore, have no ground for complaint, and the statute is by no means unconstitutional.
 

 Accordingly, the order appealéd from should be modified to the extent of directing judgment in favor of respondents, declaring that section YY51-6.0 (subd. c, par. [9], cl. [a]) is constitutional and, except as so modified, affirmed.
 

 Judges Burke, Scileppi, Bergan and Gibson concur with Judge Jasen; Chief Jqdge Fuld and Judge Breitel taking no part.
 

 Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . The RSL provided for the establishment of a Real Estate Industry Stabilization Association and for a code to be promulgated by it, subject to the approval of the City Housing and Development Administration. (§ YY51-6.0, subds. a, b.)
 

 [2]
 

 . It is not disputed that in computing the 35%, apartments that had become vacant after the plan had been presented were included and that without the inclusion of at least some of these apartments, the requisite 35% would not have been reached.