Jack KEELER and Grace Keeler, Emily Ramos, Rose Mann, John Nichols, Ethel McGinnity, Wilma and John Hilber, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Daniel W. JOY, Individually and as Commissioner of the Office of Rent and Housing Maintenance of the City of New York Department of Housing Preservation and Development, Defendant.

Fay GENUARD, Margaret J. Lennon and Patricia Bukawyn, Individually and on behalf of all others similarly situated, Plaintiffs,

and

Ralph Gulvino et al.,
Plaintiffs-Intervenors,

v.

Daniel W. JOY, Individually and as Deputy Commissioner of the Office of Rent and Housing Maintenance of the City of New York Department of Housing Preservation and Development, Defendant.

Nos. 79 C 61, 79 C 3104.

United States District Court,
E. D. New York.

March 27, 1980.

John C. Gray, Jr., Brooklyn Legal Services Corp. B., Brooklyn, N. Y., Toby Golick, Legal Services for the Elderly Poor, New York City, Marshall Green, Legal Aid Society, Brooklyn, N. Y., for plaintiffs; Patrick J. Cooney, Brooklyn, N. Y., of counsel.

Harry Michelson, Gen. Counsel, Rent Control Div., Dept. of Housing Preservation and Development, New York City, for defendant; Florence R. Zimmerman, New York City, of counsel.

## MEMORANDUM AND ORDER

PLATT, District Judge.

The above-captioned cases commenced in separate districts (the *Keeler* case in this district on January 8, 1979 and the *Genuard* case in the Southern District on May 21, 1979) challenge the New York City Rent and Rehabilitation Law, Title Y, §§ 51–1.0 *et seq.*, Administrative Code of the City of New York ("City Rent Control Law") claiming that said Law does not afford procedural due process to tenants in rent controlled apartments prior to eviction on grounds other than non-payment of rent or certain acts of misconduct. Specifically, plaintiffs claim that they are entitled to a "trial-type hearing" with adequate notice, a transcript of the proceedings and a personal consideration or review of the transcript by the ultimate administrative decision maker. They also complain that tenant plaintiffs are not timely or properly advised as to their rights as to counsel and are not given an opportunity to review recommendations and reports.

Plaintiffs seek to bring these actions as a class action on behalf of all others similarly situated and seek declaratory and injunctive relief. They have moved for (i) a preliminary injunction restraining the New York City Rent Commissioner from issuing certificates of eviction and staying all such certificates issued after July 1, 1978 pending the determination of this action, (ii) class action certification and (iii) summary judgment.

The proceedings as to and the manner of treatment of each plaintiffs' and intervening plaintiffs' cases are different and the merits with respect to each undoubtedly bear little or no resemblance to one another, but this need not concern us here. Our inquiry is whether the City Rent Control Law violates the procedural due process, if any, to which tenant plaintiffs are entitled.

The City Rent Control Law prescribes the circumstances under which a landlord may be entitled to a certificate of eviction (N.Y. C.Admin.Code § Y 51–6.0(b):

> Subject to the provisions of paragraph (3) of subdivision c of section Y 51–13.0 of this title [relating to the termination of *state* rent control jurisdiction], no tenant shall be removed or evicted on grounds other than those stated in subdivision a of this section [relating to evictions without a Certificate of Eviction] unless on application of the landlord the city rent agency shall issue an order granting a certificate of eviction in accordance with its rules and regulations designed to effectuate the purposes of this title, permitting the landlord to pursue his remedies at law. The city rent agency shall issue such an order whenever it finds that:
>
> (1) The landlord seeks in good faith to recover possession of a housing accommodation because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his immediate family; provided, however, that where the housing accommodation is located in a building containing twelve or less housing accommodations and the landlord does not reside in the building and the landlord seeks in good faith to recover possession for his own personal use and occupancy, an immediate and compelling necessity need not be established; or
>
> (2) The landlord seeks in good faith to recover possession of a housing accommodation for which the tenant's lease or other rental agreement has expired or

otherwise terminated, and at the time of termination the occupants of the housing accommodation are subtenants or other persons who occupied under a rental agreement with the tenant, and no part of the accommodation is used by the tenant as his dwelling; or

(3) The landlord seeks in good faith to recover possession of a housing accommodation for the immediate purpose of substantially altering or remodeling it, provided that the landlord shall have secured such approval therefor as is required by law and the city rent agency determines that the issuance of the order granting the certificate of eviction is not inconsistent with the purpose of this title; or

(4) The landlord seeks in good faith to recover possession of housing accommodations for the immediate purpose of demolishing them, and the city rent agency determines that such demolition is to be effected for the purpose of constructing a new building, [provided that the landlord comply with requirements relating to the number of new units and relocating tenants]

&ast; &ast; &ast; &ast; &ast; &ast;

Section Y 51–8.0 subd. c of said Law provides that

"Any proceedings under this section *may* be limited * * * to the filing of affidavits, or other written evidence, and the filing of briefs * * *." (Emphasis added).

Section 55 of the New York City Rent & Evictions Regulations promulgated under Title Y of Chapter 51 provides that:

"Sec. 55. Occupancy by landlord or immediate family

a. A certificate *shall* be issued where the landlord seeks in good faith to recover possession of a housing accommodation because of immediate and compelling necessity for his own personal use and occupancy, or for the use and occupancy of his immediate family * * * As used in this paragraph, the term "immediate

family" includes only a son, daughter, grandson, granddaughter, stepson, stepdaughter, father, mother, father-in-law, mother-in-law, grandfather, grandmother, stepfather or stepmother."

With respect to the procedure for obtaining a certificate of eviction, section 85 of said Regulations provides that:

At any stage of a proceeding the District Rent Director *may*:

a. Reject the application if it is insufficient or defective.

b. Make such investigation of the facts, hold such *conferences*, and require the filing of such reports, evidence, affidavits, or other material relevant to the proceeding, as he may deem necessary or appropriate.

c. Forward to or make available for inspection by either party any relevant evidence and afford an opportunity to file rebuttal thereto.

d. For good cause shown, accept for filing any papers, even though not filed within the time required by these Regulations.

e. Require any person to appear or produce documents, or both, pursuant to a subpoena issued by the Administrator.

f. Consolidate two or more applications or proceedings which have at least one ground in common.

g. Forward to either party a *notice of action* proposed to be taken by the District Rent Director.

h. Grant or order *a hearing*, except that no multiple tenant initiated proceeding for reduction in rents in a building may be determined without a hearing, (Emphasis added)

&ast; &ast; &ast; &ast; &ast; &ast;

I

Pursuant to these Regulations, a landlord first applies for a certificate of eviction by filing an application on a special form with the District Rent Director setting forth factual grounds therefor.[1]

---

1. Regulation Section 81.
For example, in the *Keeler* case herein, plaintiff's landlords filed such a sworn application in

which they stated: that a three family building owned by a husband and wife is involved; subject tenants' apartment is a ground floor walk-

Pursuant to Regulation 83, the District Rent Director mails a copy of the application and a Notice of Commencement of Eviction Proceedings before the District Rent Director. The Notice states, among other things:

"Attached hereto is a copy of an application for a certificate filed by your landlord. The facts set forth in the application *may* entitle him to such certificate of eviction *under the provisions of the rent regulations.*

You are hereby afforded an opportunity to oppose this application by filing an answer * * *

If you fail to file an answer opposing the application within the time limit specified above, the District Rent Director *may* grant a certificate of eviction.

To the Tenant: This is not an Eviction Notice. You Are Not Required to Move Until Ordered By A Court."

Plaintiffs' first complaint is that the Notice given to them is "inadequate" in that it does not indicate what the legal grounds are for the issuance or denial of a certificate of eviction or who must prove what, and it does not contain a notice or suggestion that tenant should obtain counsel or assistance.

■ In this Court's view this objection is without merit. It is not the purpose of this or any other Notice of a pending proceeding to advise the parties of their rights, defenses, etc., nor to advise them with respect to the burden of proof on different issues. In the great majority of cases no such information is ever required in a summons and/or complaint in a State or Federal Court action. The Notice and the annexed application are clear as to the purpose of the proceeding, i. e., to evict the tenants from the premises in which they are living; further, the Notice sets forth the facts in support of eviction and refers specifically to

the "rent regulations." The Notice and application forms are clearly adequate for these purposes.

Even if it be assumed that these documents are not sufficient to alert a tenant to the need for counsel or other assistance, a tenant is specifically so informed in the notice of conference which follows almost immediately and which provides that "both landlord and tenant may be represented by counsel . . .".

## II

As noted above, Section 85 of the Regulations provides in pertinent part:

"At any stage of a proceeding the District Rent Director may:

\* \* \* \* \* \*

b. Make such investigation of the facts, hold such *conferences*, and require the filing of such reports, evidence, affidavits, or other material relevant to the proceeding, as he may deem necessary or appropriate.

\* \* \* \* \* \*

h. Grant or order *a hearing*, except that no multiple tenant initiated proceeding for reduction in rents in a building may be determined without a hearing. * * *" (Emphasis added).

Thus, the second step in the process is for the District Rent Director (if he does not reject the landlord's application as insufficient or defective) to send to the tenants a "notice of conference" which significantly provides, *inter alia*, that

"Both landlord and tenant may be represented by counsel and may bring with them witnesses and written evidence in support of their contentions."

■ Notwithstanding this provision and Section 85(h) of the Regulations set forth above, plaintiffs complain that they are en-

---

in apartment; possession is requested for the landlady's mother, a widow aged 48, presently living in a top third floor walk-up apartment; information as to ownership and equity in the building, the date landlords took title, from whom, relationship, if any, to predecessor, the purchase price, the amount paid in cash, source of funds and the building's assessed value; the reason for the application and advice from the landlady's mother's physician that she not climb stairs.

titled to and are not given a "hearing" under these Regulations and defendants' procedures.[2]

On their face the procedures provided in the Regulations do not support this claim. They appear to be perfectly fair and reasonable. In the discretion of the District Rent Director a hearing *may* be granted on request or *sua sponte.*

■ Nonetheless, plaintiffs claim that "in practice, no real hearing is held." Assuming *arguendo* that any *bona fide* request for a hearing would necessarily be inevitably and arbitrarily denied, the conferences before the hearing examiner, which are concededly always held, are adequate to satisfy due process in these proceedings. Tenants may, after all, request and obtain subpoenas for and/or produce witnesses, exhibits, affidavits (all of which are considered) inspect opposing papers and other materials and question opposing witnesses and/or present and file material in rebuttal.

■ Despite all this, tenant-plaintiffs complain that due process is not satisfied because no tape recording or stenographic transcript of the proceedings at the conference is provided by the District Rent Director. There is nothing, however, to prevent the tenant-plaintiffs for making such a recording or transcript of their own. *See Knowlson v. Joy, etc.,* Docket No. 78 Civ. 2685 (S.D.N.Y.1979) (Knapp, J.).

Moreover, absent a formal hearing, there would appear to be little need for a recording or a transcript. A cursory examination of the examiner's report in the *Keeler* case, for example, reveals the appearance of the landlords, Mr. and Mrs. Feliciano, their attorney, the landlady's mother, and the tenant; statements by the landlord and the tenant; a tentative decision by the examiner to "hold" for (i) affidavit of the mother, (ii) proof of the relationship of the mother and daughter, and (iii) an inspection of the mother's present premises. The tenant's statement claims only present hardship but makes no challenge to the mother's doctor's statement, the immediate compelling necessity of the application, or the good faith of the landlords.

When the examiner obtained (i) an affidavit of the mother that she was such and that she would in good faith move into the apartment, (ii) a birth certificate of the mother's daughter (the landlady), and (iii) an inspection report as to the mother's present residence, all issues of fact had been resolved and there was no need for any further conference or any hearing.

### III

The third step in the process is for notice to be given to the tenant of the issuance of an order of eviction and of the tenant's right to file a protest to the Commissioner of the Department of Rent and Housing Maintenance. In the *Keeler* case the tenants did so stating that tenants' lack of counsel at the District Rent Office "influenced the hearing officer" against them and that "it is obvious the landlord seeks to evict me as (sic) to get a higher rental for his apartment." Significantly, the Keelers at this juncture were represented by counsel, indeed the same counsel who represent them in this case.

Section 97 of the Regulation provides as follows with respect to the proceedings before the Commissioner:

2. On the oral arguments, Ms. Florence Zimmerman, counsel for the defendants, represented to the Court and maintained that where a hearing was requested and one was necessary to resolve a factual dispute one would be granted. Ms. Toby Golick, Senior Attorney of the Legal Services for the Elderly Poor, who seeks to represent the plaintiff class here, points out that eight of the fourteen named plaintiffs herein requested a hearing and one of them (Angela Criscio) asked for "a full due process hearing" but all of them were accorded only a conference. It may well be that the commissioner is abusing his discretion in one or more cases in not according one or more of these plaintiffs a hearing but the remedy for that abuse is not found here but in the State courts. For procedural due process purposes it is sufficient that a hearing is available on request and accorded when necessary. *See Greenwald, et al. v. Whalen, et al.,* 609 F.2d 665 (2d Cir. 1979); *Pfizer, Inc. v. Richardson,* 434 F.2d 536, 543 (2d Cir. 1970). An Article 78 proceeding is available in the event of an abuse of the Commissioner's discretion. *See, infra,* p. 574.

Within a reasonable time after the filing of the protest and the answers, if any, the Commissioner *may*:

a. Reject the protest if it is insufficient or defective.

b. Make such investigation of the facts, hold such *conferences*, and require the filing of such reports, evidence, affidavits, or other material relevant to the proceeding, as he may deem necessary or appropriate.

c. Forward to or make available for inspection by either party any relevant evidence and afford an opportunity to file rebuttal thereto.

d. For good cause shown accept for filing any papers, even though not filed within the time required by these Regulations.

e. Require any person to appear or produce documents or both pursuant to a subpoena issued by the Commissioner.

f. Grant or order *a hearing.* (Emphasis added).

Again the regulations provide for a hearing on request of either party or on an order issued *sua sponte* by the Commissioner. Following the receipt of a protest and the landlord's answer, the Commissioner reviews all of the evidence in the record, considers the matter "de novo" and makes a decision.

■ Tenant-plaintiffs complain, however, that since these and the District conferences are not conducted by the Commissioner who makes the ultimate decision, and he does not have a recording or transcript, but only notes and a report of an examiner, the proceedings are necessarily constitutionally deficient. They also say that because the examiner does not provide the parties with a copy of his report, they are denied the right to correct the same. As to these alleged deficiencies, the reports are a matter of public record and available to both parties for use in connection with their protest papers and would necessarily be available if either party requested a conference or hearing before the Commissioner. The fact that the Commissioner relies on the notes and the report of the examiner (when no

transcript has been made) does not render the same constitutionally deficient. *Knowlson v. Joy, supra.*

## IV

■ In addition to these proceedings, which collectively consist of at least three separate notices, two opportunities to be heard and present affidavits, witnesses and exhibits, an initial and a separate "de novo" consideration of the merits, adequate records of the proceedings themselves, an opportunity to make a more complete record of the same, and a decision with reasons for the same, a tenant-plaintiff, on denial of his or her protest, may bring an Article 78 proceeding in the State Supreme Court and obtain a further review there. Due process in many cases requires far less; (*Cf. Argo v. Hills*, 425 F.Supp. 151 at 158, 159 (E.D.N. Y.1977) and cases cited therein), in these cases it requires no more.

## DISCUSSION

In a motion for a preliminary injunction, such as this,

"there must be a showing of possible irreparable injury and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Selchow & Righter Co. v. McGraw-Hill Book Co.*, No. 77–7569, slip op. at 3533, 3537, 580 F.2d 25 at 27 (2d Cir. 1978); *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1358 (2d Cir. 1976); see Mulligan, *Foreward—Preliminary Injunction in the Second Circuit*, 43 Brooklyn L.Rev. 831, 832–33 (1977)."

*Caulfield v. Board of Education of City of N. Y.*, 583 F.2d 605 at 610 (2d Cir. 1976). *See also Whelan v. Colgan*, 602 F.2d 1060 (2d Cir. 1979) and *Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631 (2d Cir. 1979).

It must also be borne in mind that since only the constitutionality of the procedures

used under the City Rent Control Law are in question here, our jurisdiction does not require us to undertake a consideration of the merits of every action taken by the Commissioner here. "Such review properly remains in the jurisdiction of the appropriate state courts." *Cf. Escalera v. New York City Housing Authority,* 425 F.2d 853, at 864, 865 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

█ Reduced to its simplest form, plaintiffs' claim is that they have a constitutionally protected property interest in the form of a right to renew their leases indefinitely, a right of which they may not be deprived without due process of law. This question, however, has already been decided adversely to the plaintiffs by the New York Court of Appeals in *Kovarsky v. H. D. A.,* 31 N.Y.2d 184, 335 N.Y.S.2d 383, 286 N.E.2d 882 (1972). There, the Court of Appeals dismissed claims of tenants that the City Rent Control Law gave them the right to indefinite renewal of their leases and that this right could not be limited in the same law by provision for conversion to co-operative ownership upon purchase by a minority (35%) of the tenants, stating (31 N.Y.2d at 193, 335 N.Y.S.2d at 389, 286 N.E.2d at 886):

"Appellants' argument is premised on the contention that the RSL gives them the right to indefinite renewal of their leases and that this right cannot constitutionally be limited in the same law by a provision

for conversion to co-operative ownership upon purchase by a minority (35%) of the tenants. Appellants ignore, however, the fact that prior to the passage of the RSL, they possessed no rights at all to renewal leases, and that the enactment of the RSL granted them only certain *limited rights.* Included is the right to the renewal of leases, *subject, however* to an *exception where a plan for conversion has been presented,* effective upon the purchase by a certain number of tenants. *The law, thus, does not arbitrarily limit a more extensive right, but, rather, grants to tenants a limited right* which they previously did not have. Appellants, therefore, have no ground for complaint, and the statute is by no means unconstitutional." (Emphasis added).

*See also Argo v. Hills,* 425 F.Supp. 151, 157–58 (E.D.N.Y.1977).

In short, the tenant-plaintiffs had no rights at all to renewal leases except by virtue of the City Rent Control Law, that gave them only limited rights which they previously did not have and there has thus been no deprivation and the law may not be said to be unconstitutional.

█ It is important to note that the cases cited by the tenant-plaintiffs, viz., *Goldberg v. Kelly,* 397 U S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); [3] *Escalera v. New York City Housing Authority,* 425 F.2d 853 (2d

---

**3.** Plaintiffs argue that the standards applicable to welfare benefits which were announced in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), apply equally to the case at bar. We disagree. Unlike *Goldberg,* the instant case does not involve an individual's right to receive continued benefits flowing from the State. Rather, the "benefactor" here is an individual *property owner*—the extent of whose beneficence is clearly defined by the statute. Thus, a recognition of the distinction between the parties in the two cases demonstrates that *Goldberg* is not controlling.

Moreover, the proceedings complained of are not inconsistent with the *Goldberg* standard. The extent of the proceedings necessary to protect a citizen's rights must be determined in light of the nature of the interests involved. *Goldberg v. Kelly,* 397 U.S. 254, 265, 90 S.Ct. 1011, 1019, 25 L.Ed.2d 287 (1970). The conflicting interests in *Goldberg* were characteriz-

ed by the Court as the individual's very means to live versus the government's interest in conserving fiscal and administrative costs. Although the interests of the rent controlled tenant which are ultimately affected are arguably of equal magnitude to those of the plaintiffs in *Goldberg,* the interest here asserted by the landlord, *to wit,* the right for him or members of his family upon a showing of a good faith intention, or immediate compelling necessity to occupy property which he *owns,* is of greater magnitude than those presented by the government in *Goldberg.* The existing administrative procedures which provide the landlord *with* an opportunity to show the existence of circumstances which meet the statutory standard, and the tenant with the opportunity to *contest the* existence of those circumstances are sufficient to protect the tenant's interest in ensuring that he is not *dispossessed without the require-*ments of the statute having been met.

576

Cir. 1970), *cert. denied*, 400 U.S. 853, 91
S.Ct. 54, 27 L.Ed.2d 91 (1970); *Lopez v.
Henry Phipps Plaza South, Inc.*, 498 F.2d
937 (2d Cir. 1974); and *Short v. Fulton
Redevelopment Co.*, 390 F.Supp. 517 (S.D.N.
Y.1975), all involved "governmental in-
volvement" in termination and rent in-
crease situations. No such governmental
involvement exists in the case at bar.

Moreover, as indicated above, the proce-
dures prescribed by the City Rent Control
Law and the Regulations promulgated
thereunder, afford the tenant-plaintiffs
herewith ample protection, fulfill due proc-
ess requirements and may not be said to be
constitutionally deficient. *See Burr v. New
Rochelle Municipal Housing Authority*, 479
F.2d 1165, 1170 (2d Cir. 1973) and *Argo v.
Hills*, 425 F.Supp. 151, at 158–59 (E.D.N.Y.
1977).

Plaintiffs also allege that the City Rent
Control Law violates the Equal protection
Clause of the Fourteenth Amendment but
offer nothing in support thereof other than
the claim that the Law discriminates (i)
against indigent persons because it denies
them an opportunity to obtain a transcript
of the conferences and (ii) against all rent
controlled tenants whose eviction is sought
(a) on the basis of a certificate of eviction
as compared to those whose eviction is
sought on other grounds (e. g., non-payment
of rent, misconduct, etc.) or (b) by other
agencies such as the New York City Hous-
ing Authority.

For the reasons indicated above,
these contentions are also without merit.
Moreover, there is a rational basis for pro-
viding different procedures in those cases
involving failure to pay rent and miscon-
duct where the factual determinations are
in most cases more difficult to make with-
out weighing the credibility of the witness-
es and the other evidence.

From the foregoing, it should be clear
that plaintiffs have shown neither probable
success on the merits nor sufficiently seri-
ous questions going to the merits to make
them a fair ground for litigation and hence
their motions for a preliminary injunction
must be and the same hereby are denied.

It is also clear that plaintiffs are not, and
defendants are, entitled to summary judg-
ment herein even though defendants have
not cross-moved therefor. *Lowenschuss v.
Kane*, 520 F.2d 255, 261 (2d Cir. 1975).

Accordingly, plaintiffs' motions for a pre-
liminary injunction, class action certifica-
tion and money judgment herein are denied
and defendants are granted judgment dis-
missing plaintiffs' complaints, with costs.

SO ORDERED.