OPINION OF THE COURT
Ira Gammerman, J.
Petitioners seek judicial review pursuant to article 78 of the following four actions by the respondent Board of Estimate:
(1) An amendment to the New York City Zoning Resolution pursuant to section 200 of the New York City Charter *775 creating a special zoning district known as the Special Manhattan Bridge District (art 11, ch 6, §§ 116-00 — 116-70, Board of Estimate Cal No. 91, adopted Aug. 20, 1981).
(2) and (3) Amendments to the zoning map pursuant to sections 197-c and 200 of the New York City Charter delineating the boundaries of the Special Manhattan Bridge District (Board of Estimate Cal Nos. 5, 6, adopted Aug. 20, 1981).
(4) Approval of a special permit pursuant to sections 197-c and 200 of the New York City Charter allowing respondent Overseas Chinese Development Corp. (hereinafter OCD) to proceed with a proposed project (the East/West Tower) in the Special Manhattan Bridge District (Board of Estimate Cal No. 7, adopted Aug. 20, 1981).
CITY RESPONDENTS’ CROSS MOTION FOR ADJOURNMENT
The respondent Board of Estimate and City Planning Commission (hereinafter collectively City respondents) seek an adjournment of that portion of the proceeding pertaining to the approval of the special permit (item [4], supra) pending a final determination by the Planning Commission as to whether the permit should be rescinded pursuant to the commission’s resolution of May 17, 1982, or, in the alternative, an adjournment of the entire proceeding pending that determination.
The Planning Commission is apparently concerned about an April, 1982, report of the Department of Investigation dealing with OCD’s activities in inducing the tenant petitioners to vacate the building on the proposed site. The application for the special permit required that the site be substantially vacant. Tenant petitioners claim that this was accomplished as a result of OCD coercion. This claim appears to be supported by the Department of Investigation report. After reciting a litany of horrors undergone by the tenants, the report reaches the rather understated conclusion that the tenants took part in settlement negotiation “under pressure”. (Department of Investigation report, p 94.) Based on that report the City Planning Commission resolved on May 17, 1982, that it would rescind OCD’s special permit, unless OCD could establish that the Department of Investigation’s findings and con *776 elusions “are inaccurate or unsubstantiated, or unless such other facts and information are produced as would preclude the recission [sic] of the Special Permit approval by the City Planning commission.” It is this resolution that the City respondents cite as a basis for adjournment.
The legality of the adoption of the amendments to the New York City Zoning Resolution, of the amendments to the zoning map, and of the process by which the special permit itself was granted, all before the court, raise, serious issues of proper notice, due process and abuse of discretion that would not be rendered moot even if the special permit were rescinded. Indeed the developer, OCD, opposes adjournment on the ground that, by adding the uncertainty as to the fate of its special permit occasioned by an adjournment of this proceeding to the uncertainty already resulting from the City Planning Commission’s May 17 resolution, such action would impose unnecessary delay and financial loss on OCD. The cross motion is, therefore, denied.
PROPRIETY OF CPLR ARTICLE 78 PROCEEDING TO THE RELIEF SOUGHT BY PETITIONERS
There is no dispute between the parties that the granting of the special permit (item [4], supra) was an administrative act and, thus, properly subject to article 78 review. The City respondents contend, however, that items (1) through (3) are legislative acts, not subject to article 78 review. They maintain that an action for declaratory judgment is the proper procedural vehicle for challenging legislative acts.
As a general statement of the proper uses of article 78 proceedings and declaratory judgment actions, City respondents’ analysis is correct. Where, however, as here, all the necessary parties are already properly before the court, the court, pursuant to CPLR 103 (subd [c]), can treat those portions of the article 78 petition challenging the constitutionality of legislative acts as a request for declaratory relief. (Matter of Kovarsky v Housing & Dev. Admin. of City of N. Y., 31 NY2d 184.) The court elects to do so.
*777 UNIFORM LAND USE REVIEW PROCEDURE
Items (2), (3), and. (4) (the amendments to the zoning map and the approval of the special permit) are the final steps in a process prescribed by section 197-c of the New York City Charter, as implemented by the City Planning Commission’s regulations adopted June 1, 1976, known as the Uniform Land Use Review Procedure (hereinafter ULURP). This procedure was adopted to remedy what was described by the State Charter Revision Commission in its report entitled “Planning for Land Use Recommendations” (March 26, 1975) as one of the worst features of land use planning as it existed before the advent of ULURP. “Communities are often not informed of pending land use plans and public improvements until after applications have been filed and reviewed by central City agencies.” {Id., p 2.) The remedy proposed by the report was a “decentralized hearing procedure * * * through which communities and their representatives can participate in planning decisions.” {Ibid.)
ULURP provides for community participation in land use planning decisions by the mechanism of public hearings, first at the community board level, second (in some cases) at the Planning Commission level, and finally before the Board of Estimate. At the first level, subdivision c of section 197-c of the New York City Charter provides that the community board, prior to holding its hearing on a proposal or application, shall “notify the public of the proposal or application in a manner specified by the city planning commission pursuant to subdivision g of this section”. Subdivision g provides that the City Planning Commission shall establish “guidelines, minimum standards, and procedural requirements” for ULURP pursuant to section 197-c of the New York City Charter. These guidelines, standards, and procedural requirements are prescribed by the ULURP regulations adopted by the City Planning Commission on June 1, 1976. In particular, sections 4.030 and 6.050 of the regulations prescribe the notice of hearing that the community board and the Planning Commission, respectively, must give the public. In both instances the ULURP notice of hearing is to consist of publication in the City Record for 10 days immediately *778 preceding the hearing and in an issue of the Comprehensive City Planning Calendar no less than 10 days prior to the hearing.
ADEQUACY OF NOTICE
Petitioners argue that this form of notice fails to implement and in fact frustrates the purpose of section 197-c of the New York City Charter and that, in particular, as applied to the residents of the Special Manhattan Bridge District (especially the tenant petitioners), such notice is violative of the due process requirements of the Fourteenth Amendment to the United States Constitution. The court agrees.
It cannot be assumed that the public hearings mandated by section 197-c of the New York City Charter are meant to be empty formalities. On the contrary, in view of the legislative history of ULURP, these hearings are designed to expose the planning process to more public scrutiny than had previously been the case and to insure that community residents could voice their views during the decision-making phase of that process rather than after the City Planning Commission and Board of Estimate had presented them with a fait accompli. Obviously, a merely formal notice, not calculated to reach the members of the community affected, does not fulfill the legislative intent.
Publication in the City Record and Comprehensive City Planning Calendar, obscure publications much more likely to be read by some lawyers, professional planners, and real estate developers than by the man or woman in the street in Chinatown, completely fails to provide adequate notice to the community. It would take only a soupcon of cynicism to conclude that the drafters of sections 4.030 and 6.050 wished to perpetuate the very evil ULURP was designed to counteract.
If residents of a local community are to be put on notice, such notice should be placed in a newspaper of general circulation within the community. Indeed, when the developer wished to find tenants for the proposed East/West Tower, it advertised in Chinese-language newspapers in general circulation in the Chinatown area. The notice published in two obscure publications, unknown to most *779 English-speaking New Yorkers, to say nothing of those who speak only Chinese, is not the adequate notice mandated by the New York City Charter.
Because of this inadequate notice, the actions of the Board of Estimate in amending the zoning map and in granting the special permit (pursuant to New York City Charter, § 197-c) cannot stand.
DUE PROCESS CONSIDERATIONS
Beyond frustrating the purpose of the legislation they are meant to implement, the notice requirements of the ULURP regulations are violative of the due process requirements of the Fourteenth Amendment. As the United States Supreme Court has said, “when notice is a person’s due, process which is a mere gesture is not due process.” (Mullane v Central Hanover Bank & Trust Co., 339 US 306, 315.) If the New York City Charter prescribes notice of public hearings, then due process requires that the notice given not be a mere gesture. If a person is entitled to notice, due process requires that “[t]he means employed must be such as one desirous of actually informing” that person “might reasonably adopt to accomplish it.” (Mullane v Central Hanover Bank & Trust Co., supra, p 315.) Publication in the City Record and Comprehensive City Planning Calendar do not qualify as means that one might reasonably adopt to inform the Chinatown community if one was actually desirous of informing that community. It is constitutionally impermissible to grant by law a right to be heard at a public hearing on the one hand, and on the other to adopt a notice procedure that renders that right utterly meaningless. The report of the City Planning Commission on its June 3,1981, hearing (at which the matters in the instant case were considered) illustrates how the planning process works when there is inadequate notice of hearings: “There were 4 appearances in favor and the hearing was closed.”
The notice of hearing that would meet the requirements of due process must meet the Mullane standard, that is, it must be “reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their *780 objections.” (Mullane v Central Hanover Trust Co., supra, p 314.)
In determining how to apprise the members of the Chinatown community of impending public hearings, the fact that a substantial portion of that community speaks only Chinese must be considered. It is apparent to the court, as it was apparent to OCD when it was soliciting tenants for its East/West Tower, that Chinese-language newspapers are a reasonable means of informing the Chinatown community. This is not to say that notice, to be in accordance with the Fourteenth Amendment, must be so polyglot that every linguistic minority, no matter how small, should have notice in its own tongue. Where the community to be notified is such that there is substantial likelihood that notice only in English will not inform large portions of that community, then, if the administrative burden and practical difficulties of giving the non-English-speaking portions of the community notice in their own languages are not disproportionate to the size of the linguistic groups in question, notice in those other languages must be given. Notice, in whatever language, should be in newspapers of general circulation in the target community. Thus, in the instant case, notice in an English-language newspaper of general circulation, as well as in a Chinese-language newspaper of general circulation in the community, was required.
The notice requirements of section 200 of the New York City Charter, pursuant to which the New York City Zoning Resolution was amended (item [1]), call for publication for 10 days in the City Record alone. (New York City Charter, § 200, subd a, par 1). By the terms of section 200, the notice of hearing “shall afford persons interested an opportunity to be heard”. If the section were to be interpreted as meaning that the notice of hearing in the City Record is, by itself, sufficient, then the section would be unconstitutional on its face. It is not necessary, however, to reach such a conclusion. Although section 200 mandates that the time and place where interested persons may be heard must be “specified in a notice of hearing to be published in the City Record”, it does not mandate that such notice is to be the only notice given. The court refrains from conclud *781 ing that section 200 was enacted in derogation of the due process requirements of the Fourteenth Amendment as adumbrated in Mullane. Instead, the notice published in the City Record must be interpreted as being additional to the notice reasonably calculated to inform the community required by Mullane. Thus, since notice of hearing in the instant case was limited to publication in the City Record, it was constitutionally defective, rendering the Board of Estimate’s action in amending the New York City Zoning Resolution a nullity.
Having found that the process which led to the Board of Estimate’s actions in items (1) through (4) was fatally flawed, the court need not consider petitioners’ other claims, for example, that the amendment to the New York City Zoning Resolution was not in accordance with a comprehensive plan, or that the special permit was not in accordance with the amendment to the New York City Zoning Resolution.
Accordingly, it is the judgment of the court for the reasons set forth above that the action of the Board of Estimate in approving the special permit was illegal and a nullity. The special permit is vacated.
For the reasons set forth above, the actions of the Board of Estimate in amending the New York City Zoning Resolution and in amending the zoning map are declared to be illegal, contrary to the Fourteenth Amendment of the United States Constitution, and void.