OPINION OF THE COURT
Alice Schlesinger, J.
In this action plaintiffs are challenging the constitutionality of Civil Service Law §§ 50-a and 50 (7).
*254 In 1986 the Legislature amended the Civil Service Law by enacting section 50-a which sets up a review procedure in New York City for challenging key answers to civil service examinations. The legislation permits candidates to file written protests to the proposed answer key before the Test Validation Board (TVB). A final answer key is issued after taking into consideration the protests.
Section 50 (7) limits court review to the question of whether established procedures have been followed. The court lacks jurisdiction to determine whether the final selection of answers is correct.
This legislation was passed, in part, in response to Matter of Acosta v Lang (13 NY2d 1079 [1963]) which permitted dissatisfied candidates to challenge the Civil Service Commission’s selection of an answer in a CPLR article 78 proceeding. The Acosta court held (supra, at 1081): "Where there are two equally acceptable answers to a question, the selection of one as the correct answer must be deemed to be the result of an arbitrary decision * * * A hearing to determine such an issue does not constitute an interference with the discretion committed to the commission but merely serves to keep that body within the constitutional limits of its jurisdiction (N. Y. Const., art. V, § 6).”
Acosta (supra) and its progeny spawned much litigation which often lasted years. Thus the Legislature stated that prelist administrative proceedings curtail "costly and delay-ridden legal challenges. Preparation of final key answers for examinations in highly technical areas may also benefit from scrutiny by the examinees themselves, who possess extensive experience and education in the fields covered by the test” (Governor’s Bill Jacket, Mem introducing L 1986, ch 783).
In December 1986 plaintiffs Frank Ungaro and Michael Molinari took civil service exam No. 5608 for the position of lieutenant in the New York City Fire Department. Ungaro apparently received a failing grade of 68.[1] Molinari asserts that he scored a passing grade of 70 under the proposed answer key.
Plaintiffs contend that the TVB changed the answer to one question and deleted three questions that Ungaro had answered correctly resulting in him receiving a 68.75 instead of a 72.68. They assert that the TVB deleted four questions that *255 Molinari had answered correctly under the proposed answer key, also resulting in a failing score.
It is alleged that as a result both men received failing scores and were never given the opportunity to challenge the changes prior to adoption of the final key.
Thereafter, plaintiffs commenced the instant action seeking a declaration that Civil Service Law § 50 (7) and § 50-a are unconstitutional as they violate the constitutional guarantee of competitive examination under article V, § 6 of the NY Constitution, and deny New York civil service employees equal protection and due process. Plaintiffs also seek an order compelling the defendants to create a special eligible list.
Defendants, Judith Levitt, as Director of the New York City Department of Personnel, and the City of New York (collectively the City) oppose and cross-move for summary judgment.
The City contends relying on Matter of Martin v Ronan (44 NY2d 374 [1978]) that the action is time barred because it was not commenced within four months of the time the eligible list became final and binding on the plaintiffs. The list was established by the City on August 5, 1987 and this action was commenced on or about December 22,1987.
To determine which limitation period applies to this declaratory judgment action, one must "examine the substance of [the] action to identify the relationship out of which the claim arises and the relief sought” (Solnick v Whalen, 49 NY2d 224, 229 [1980]). There must also be an inquiry whether plaintiffs had available another form of proceeding which was time barred at the time this action was commenced. (Supra, at 230.)
While this lawsuit arises out of specific actions taken by the TVB, the underlying challenge is to the constitutionality of the amended statute. An article 78 proceeding is not the appropriate method to challenge the constitutionality of a legislative enactment (Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 191 [1972]). Thus plaintiffs’ attempt to strike section 50 (7) and section 50-a as being unconstitutional is not subject to the four-month time bar established for article 78 proceedings (see, Lai Chun Chan Jin v Board of Estimate, 101 AD2d 97 [1st Dept 1984]).
However, the result relating to plaintiffs’ request for creation of a special eligible list must be different. The procedural vehicle utilized to create a special list was an article 78 proceeding. Moreover, even if the court were to find the amendments unconstitutional, plaintiffs would have to estab *256 lish that their answers were equally correct to the ones chosen. This so-called Acosta challenge has always been in the form of an article 78 proceeding. Thus, to obtain the relief of creation of a special eligible list, plaintiffs must have commenced this aspect of the action within the time set forth in CPLR 217.
Defendants maintain that the statute begins to run from August 5, 1987, the date on which the eligible list was established. Plaintiffs assert that this defense is waived because it was not asserted as a defense in defendants’ answer to the amended complaint.
Defendants’ reliance on General City Law § 20 (5) for the proposition that a municipality may not waive a Statute of Limitations defense is misplaced. This statute expressly applies to money claims, which is not at issue here.
At oral argument the City brought to the court’s attention Armstrong v Peat, Marwick, Mitchell & Co. (150 AD2d 189 [1st Dept 1989]) as an alternative basis to vitiate waiver of the Statute of Limitations defense. Armstrong (supra) holds that a waived defense pursuant to CPLR 3211 (e) may be revived provided plaintiff is not prejudiced or surprised by the amendment. Defendants, however, have not moved to amend their answer.[2]
Alternatively, plaintiffs contend that their time to commence the action did not begin to run until September 15, 1987 which was the date the TVB allegedly permitted them to review the final key answers.
In Martin v Ronan (supra, at 381), the Court stated that "[i]n order for the Statute of Limitations to start running there must be a determination 'final and binding upon the petitioner’ (CPLR 217) and it must be one by which petitioner is aggrieved.”
In the instant matter, it cannot be said that plaintiffs were aggrieved on the date the eligible list was promulgated. Plaintiffs allege that it was not until a later date that they learned that the TVB had rejected answers which had initially been designated as correct. The amended complaint at paragraphs 14 and 15 provides as follows:
"14. On or about August 7, 1987, the Test Validation Board informed both Frank and Michael Molinari that they could *257 see the determination of the Test Validation Board if they applied by August 24, 1987.
"15. On September 15, 1987, the date set by Test Validation Board, Frank Ungaro was permitted to review the approximately 110 page document that consisted of the final key answers to examination no. 5608. At that time firefighter Ungaro learned that firefighters Ungaro and Molinari learned [sic] that their protests had been denied and that both their scores had been reduced by the procedures used by the Test Validation Board.”
Therefore, it was not until allegedly September 15, 1987 when plaintiffs came to understand what the TVB had done. It was not until this date that plaintiffs were aggrieved by the determination and it was at that time that they could formulate a cause of action.
However, plaintiffs’ above allegations appear only in their complaint which is unverified and in a brief submitted by counsel. Furthermore, it is unclear when Molinari learned that the answers had been changed. Under these circumstances, there is an issue of fact as to when the plaintiffs learned of the changes made by the TVB.
Next, defendants contend that the action should be dismissed on the ground of loches. The court is not persuaded by this argument. Plaintiffs have failed to timely move the case to resolution. However, no real showing of prejudice has been made out by the City. Moreover, if the defendants felt they were being prejudiced by the plaintiffs’ inaction or believed that passage of time was affecting the reliability of the examination, they were always free to move for summary judgment or at least serve a demand on the plaintiffs to prosecute the lawsuit.
Defendants also seek to dismiss the action for failure to join necessary parties. While plaintiffs in their amended complaint seek to set aside the findings of the TVB, they have limited the relief they seek to creation of a special eligible list. The 1,030 lieutenants who have been appointed from the list will not be affected if such a judgment were granted in favor of the two plaintiffs. Nor will the rights of any of the approximately 7% of individuals who successfully passed the exam but were not promoted off the list be affected because the list expired on August 5,1991 by operation of law.
Turning now to the plaintiffs’ motion for summary judgment, their key assertion is that the section 50-a protest *258 procedures are unconstitutional in that they violate article V, § 6 of the NY Constitution. This provision provides that "Appointments and promotions in the civil service of the state and all of the civil subdivisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive”.
Section 50-a of the Civil Service Law gives persons who took a civil service examination the opportunity to contest any answer or rating guide by filing a protest within 30 days of the Personnel Department making the proposed key answers or rating guide available to the candidates.
The candidate may file a written protest challenging a proposed key answer or rating guide with a statement explaining why the answer selected by the candidate is as good as or better than the proposed key answer or why the rating guide is in error.
After the protest period closes the TVB must within a reasonable time make a written decision determining whether the answer(s) selected by the protesting candidate is as good or better than the proposed key answer.
The determination is binding on the City’s Personnel Director. A candidate who is aggrieved by the decision of the TVB may file an article 78 petition in the Supreme Court. However, as noted before, section 50 (7) limits the court’s jurisdiction to determining whether established procedures were followed. The court lacks jurisdiction to review whether the final answers meet the Acosta mandate.
The procedures set forth in section 50-a do not meet the merit and fitness requirement of article V, § 6 of the NY Constitution because they fail to give candidates who under the proposed answer key correctly answered a question, notice that the TVB is changing an answer. By failing to give notice these aggrieved candidates do not have an opportunity to contest the changes before a final answer key is established.
The inability to contest the changes at the administrative level coupled with not permitting aggrieved candidates the right to make an Acosta challenge in court renders section 50-a unconstitutional because the procedures can result in civil service determinations that are not made in accordance with merit and fitness.[3]
*259 Since plaintiffs were not given an opportunity to show why the answers they selected were as good or better than the answer key ultimately chosen by the TVB, section 50 (7) of the Civil Service Law must be deemed unconstitutional as applied to the facts of this case. Therefore, the plaintiffs will be given an opportunity to make an Acosta challenge to be heard by a Referee.
The Referee will hear and recommend the following. First, the date upon which plaintiffs were permitted to review the final key answer. Second, whether the answers selected by the plaintiffs were as good or better than the final key answers chosen by the TVB. Third, the Referee is also to hear and recommend what quantitative scores the plaintiffs should have received.
The request for creation of a special eligible list is held in abeyance pending receipt of the Referee’s report.
Plaintiffs are directed to promptly serve a copy of this decision upon the Legal Support Office (60 Centre St., Room 311) so that a hearing may be calendared before a Referee.

. Plaintiffs’ complaint initially states that he received a 68. However, subsequent papers state that the allegation in the complaint was incorrect.

. Had defendants moved for this relief the court would be hard pressed to discern any prejudice to the plaintiffs.

. In view of this determination, the court need not take a position on *259 the remaining constitutional claims raised by the plaintiffs other than noting that the due process claim is without merit (see, Board of Regents v Roth, 408 US 564; see also, Matter of Deas v Levitt, 73 NY2d 525).