641 F.2d 1044
 Jack KEELER and Grace Keeler, Emily Ramos, Rose Mann, John
Nichols, Ethel McGinnity, Wilma and John Hilber,
individually and on behalf of all others
similarly situated, Plaintiffs,
Jack Keeler and Grace Keeler, Plaintiffs-Appellants,
v.
Daniel W. JOY, individually and as Commissioner of the
Office of Rent and Housing Maintenance of the City
of New York Department of Housing
Preservation and Development,
Defendant-Appellee.
Fay GENUARD, Margaret J. Lennon and Patricia Bukawyn,
individually and on behalf of all others similarly
situated, Plaintiffs,
Ralph Gulvino, Margaret Szal, Elizabeth Kravitz, Lee Fagin,
Ilona Lovas, Catherina Stolfi, Johanna Rotkewicz
and Angelo Criscio, Plaintiffs-Intervenors,
Ralph Gulvino, Elizabeth Kravitz, Lee Fagin, Caterina Stolfi
and Angelo Criscio, Plaintiffs-Intervenors-Appellants,
v.
Daniel W. JOY, individually and as Commissioner of the
Office of Rent and Housing Maintenance of the City
of New York Department of Housing
Preservation and Development,
Defendant-Appellee.
 Nos. 117-118, Dockets 80-7359, 80-7362.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 24, 1980.
Decided Feb. 9, 1981.
 
 Florence R. Zimmerman, New York City (Harry Michelson, New York City, of counsel), for defendant-appellee.
 Toby Golick, New York City (Legal Services for the Elderly, John C. Gray, Jr., Patrick Cooney, Thomas P. Kerrigan, of counsel; and The Legal Aid Society, Marshall Green, and Brooklyn Legal Services Corporation B, Brooklyn, N. Y., on the brief), for plaintiffs-appellants.
 Before MOORE and KEARSE, Circuit Judges, and TENNEY,* District judge.
 MOORE, Circuit Judge:
 
 
 1
 New York City's Rent and Rehabilitation Law, Title Y, § Y51-1.0 et seq., Administrative Code of the City of New York, prescribes a procedure through which a landlord, seeking to reclaim a rent controlled apartment for his own use, may, by application to the City, evict a tenant. The issue in this case is whether the notice and conference afforded a tenant by the City satisfy the demands of due process. The trial court held that they do and granted summary judgment for the City against the tenants.[1] We affirm.
 
 BACKGROUND
 
 2
 The relevant part of the Rent and Rehabilitation Law provides that a landlord is entitled to the issuance of a certificate of eviction by the District Rent Director where the "landlord seeks in good faith to recover possession of a housing accommodation because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his immediate family; provided, however, that where the housing accommodation is located in a building containing twelve or less housing accommodations and the landlord does not reside in the building and the landlord seeks in good faith to recover possession for his own personal use and occupancy, an immediate and compelling necessity need not to be established...." § Y51-6.0(b).
 
 
 3
 A landlord seeking a certificate of eviction must file a two-page application with the City. Item ten of the application asks the landlord to state the relationship to the landlord of the person for whom occupancy is sought, if occupancy is sought for a member of the landlord's immediate family. Item twelve of the application states:
 
 
 4
 "If your necessity is based on poor health, submit medical proof of disability with this application and describe below the period and nature of disability. Your doctor may be required to appear and give oral testimony."
 
 Item thirteen asks the landlord to:
 
 5
 "State fully below any additional facts which indicate that there exists an immediate and compelling necessity for personal use and occupancy by you or members of your immediate family.... If housing accommodations are located in a building containing twelve or less housing accommodations and you do not reside in the building and you seek to recover possession for your own personal use, an immediate and compelling necessity need not be established".
 
 
 6
 The application notes above the landlord's signature that: "Application is hereby made for a certificate of eviction based upon the facts herein above stated".
 
 
 7
 After receiving the landlord's application, the District Rent Director must mail the tenant a copy of the application and a notice of the commencement of eviction proceedings. The notice states, among other things, that:
 
 
 8
 "Attached hereto is a copy of the application for a certificate filed by your landlord. The facts set forth in the application may entitle him to such certificate of eviction under the rent regulations. You are hereby afforded an opportunity to oppose this application by filing an answer."
 
 
 9
 A review of the answers filed by tenants shows that almost all of the answers argue that the landlord does not really seek to reclaim the apartment for his own use but is merely seeking a higher rent for the apartment.
 
 
 10
 The next step is the holding of a conference by a hearing officer in the District Rent Director's office. Both the landlord and the tenant are notified of the conference and informed that "Both landlord and tenant may be represented by counsel and may bring with them witnesses and written evidence in support of their contentions". At the conference the tenant may question opposing witnesses. No transcript of the conference is made. The hearing officer provides the District Rent Director with a written report on the conference. The District Rent Director then decides whether facts militating eviction have been established, and, if they have, issues a certificate of eviction. The report of the hearing officer to the District Rent Director is made available to the parties after the District Rent Director's decision has been made. Any mistakes or omissions in the report can be raised in subsequent proceedings.
 
 
 11
 If a certificate of eviction is issued by the District Rent Director, the tenant may file a protest with the Commissioner of the Department of Rent and Housing Maintenance. In a protest proceeding, the Commissioner reviews all of the evidence in the record, considers the matter de novo, and makes a decision. A tenant may, on denial of a protest, bring an Article 78 proceeding in the New York State Supreme Court.
 
 I.
 
 12
 Appellants contend that the conference procedures are constitutionally inadequate. They allege three defects.
 
 
 13
 The tenants first argue that they are denied the right to cross-examine opposing witnesses. The trial court implicitly found that there was no genuine issue of fact here when it found that tenants may question opposing witnesses. Plaintiffs' own statement under Rule 9(g) noted the City's policy that, in these conferences, both "sides should be given an opportunity to state their case and to cross examine witnesses".
 
 
 14
 The tenants' second quarrel is with the fact that the report of the hearing officer at the conference to the District Rent Director is not available to the parties until after the District Rent Director has made his decision. Yet this complaint has little merit. To allow the parties a second chance to speak by allowing them to respond to this internal memo before the District Rent Director made a decision would only complicate and delay the proceedings without enhancing the fairness of the process to any significant extent. Moreover, any unfairness that might result from serious mistakes or omissions in the report can be raised in the protest proceeding or in an Article 78 proceeding.
 
 
 15
 Third, the tenants argue that the lack of a transcript of the conference violates due process. They argue that the District Rent Director cannot properly appraise the evidence taken by the hearing officer without a transcript. The District Rent Director, does, however, receive a written report on each conference from the hearing officer.
 
 
 16
 The conference procedures thus provide plaintiffs with "the opportunity to be heard 'at a meaningful time and in a meaningful manner', Armstrong v. Manzo, 380 U.S. 545, 552, (85 S.Ct. 1187, 1191, 14 L.Ed.2d 62) (1965)," Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), and so meet the requirements of due process.
 
 II.
 
 17
 Appellants argue that the notice of the conference fails to adequately inform the tenants of the issues upon which the decision on eviction will turn; that in these proceedings helpless tenants neglect key issues and argue irrelevancies; that the tenants' proper defenses are unasserted and lost; and that the tenants' legal rights are thus trampled. Yet the record shows that this disturbing vision of the eviction proceedings is chimerical.
 
 
 18
 In fact, these proceedings are fair to the tenants. The notice and attached application give the tenants an accurate view of the issues upon which the proceedings will turn. The record shows that the answers filed by the tenants are consistently responsive to the issues upon which the proceedings will turn. Finally, the landlord must make his case in conference before both the tenant and the hearing officer. Not only the tenant but also the hearing officer have an opportunity to probe the landlord's good faith. The failure to provide for a trial-type hearing in the rent agency is not proof that the tenant is ipso facto deprived of due process.
 
 
 19
 The decision of the District Court is affirmed.
 
 
 20
 The author of this opinion is also in agreement with Judge Tenney's well-reasoned, and well-written concurring opinion.
 
 TENNEY, District Judge:
 
 21
 Although I concur with the decision reached by Judge Moore, I think it necessary to respond to the objections raised in the dissent and to further explore the legal principles governing this case. I therefore prefer to express my views in a separate concurrence.
 
 Issues of Fact
 
 22
 Summary judgment should not be granted where there are unresolved issues as to any material fact and the district court must resolve all ambiguities and draw all inferences in favor of the party opposing the motion. SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978); Fournier v. Canadian Pac. R. R., 512 F.2d 317, 318 (2d Cir. 1975); Fed.R.Civ.P. 56(c). While constitutional issues should not be decided on an incomplete factual basis, "summary judgment may be rendered ... where the record is adequate for the constitutional question presented and there is no genuine issue of material fact." 6 Moore's Federal Practice P 56.17(10), at 56-772 to 776 (2d ed. 1976); see, e. g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Gotkin v. Miller, 514 F.2d 125 (2d Cir. 1975); Beal v. Lindsay, 468 F.2d 287 (2d Cir. 1972).
 
 
 23
 In Judge Kearse's view, summary judgment should not have been granted in this case because material factual issues were disputed. First, she contends, material issues exist regarding the adequacy of the notice given to the tenant by the rent control agency. Second, she states that many questions remain unanswered with respect to the tenant conferences. I disagree with Judge Kearse's first conclusion and find that no genuine factual issues remain concerning the notice provision. And while I agree that certain facts about the tenant conferences are disputed, I do not think these issues, as reflected by the record below, rise to constitutional proportions and I therefore find them not material.
 
 1. Notice
 
 24
 Each tenant-plaintiff in this action received a document entitled Notice of Commencement of Eviction Proceedings Before The District Rent and Rehabilitation Director ("Notice"). This Notice states:
 
 
 25
 Attached hereto is a copy of an application for a certificate of eviction filed by your landlord. The facts set forth in the application may entitle him to such certificate of eviction under the provisions of the rent regulations.
 
 
 26
 You are hereby afforded an opportunity to oppose this application by filing an answer thereto upon the answer forms enclosed herewith. The original of your answer must be sworn to before a notary public or other person authorized to administer oaths and must be returned to this office together with one copy, within seven days from the date appearing at the bottom of this notice.
 
 
 27
 If you fail to file an answer opposing the application within the time limit specified above, the District Rent and Rehabilitation Director may grant a certificate of eviction.
 
 
 28
 The landlord's application form attached to the Notice states the request for a Certificate of Eviction is based on "occupancy by landlord or immediate family." The application asks for the name of the person for whom the apartment is sought and provides a space for the landlord's "further statement" explaining why the apartment is needed. The application's directions essentially embody the New York City Rent & Eviction Regulation ("Regulation") that authorizes eviction in such cases. Item 12 directs the landlord to list facts indicating "an immediate and compelling necessity for personal use and occupancy" and states that such a necessity need not be established if the apartment is located in a building containing twelve or fewer accommodations. Therefore, although the substance of the Regulation is not described in the tenant's Notice, it can be gleaned from the landlord's application attached to the Notice.
 
 
 29
 According to the dissent, the most troublesome aspect of the Notice is the boldface legend that appears on the bottom and states: "THIS IS NOT AN EVICTION NOTICE. YOU ARE NOT REQUIRED TO MOVE UNTIL ORDERED BY A COURT." Judge Kearse argues that tenants do not realize the significance of the Notice and may be lulled into the false belief that the eviction issue will be litigated in court and not resolved by the agency that sent the Notice. In her view, neither this Notice nor the Notice of Conference that follows "informs the tenant that the merits of his conviction will be conclusively determined before he gets to the court." The Notice could thus create a "misimpression" or cause a tenant to "sleep on his rights." The dissent therefore concludes that "material issues" remain unresolved and that the adequacy of the Notice cannot be determined on a motion for summary judgment.
 
 
 30
 I do not think that summary judgment is precluded by the question of whether the Notice misleads tenants and causes them to make only a token response to the landlord's application. The adequacy of the Notice must be determined by applying the legal standard that has been established in comparable due process cases. This standard, described below, can be applied to the Notice on its face because it does not demand that court know the precise impact an announcement or document makes in every instance. While the specifics of a given case may be instructive or even necessary under certain circumstances, I find that, on its face, the Notice challenged here does not deprive the tenants of due process. This conclusion rests on a legal determination that would not be disturbed by the resolution of certain unanswered but in my view not material factual questions.
 
 
 31
 In the frequently cited case of Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the Supreme Court stated that "(a)n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See, e. g., Wolff v. McDonnell, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974); Morrissey v. Brewer, 408 U.S. 471, 486-87, 92 S.Ct. 2593, 2602-2603, 33 L.Ed.2d 484 (1972); In re Gault, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967). As more recently described by the Court, "(t)he purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978). In Memphis Light, the Supreme Court found inadequate a utility company's final notice which stated that the customer's payment was overdue and that service would be terminated if payment was not made on a certain date. According to the Court, "(n)o mention was made of a procedure for the disposition of a disputed claim," although flyers distributed to customers informed them in a general fashion that billing problems could be discussed with someone at the utility company's office. Id. at 13, 98 S.Ct. at 1562.
 
 
 32
 In contrast to the final notice challenged in Memphis Light, the Notice at issue here expressly informs the tenant that he can oppose the landlord's application by filing an answer. The Notice also states that a Certificate of Eviction may be issued if no answer is filed. This document, therefore, is certainly sufficient to apprise the tenant of the pendency of the action and to afford him an opportunity to present objections. See Mullane v. Central Hanover Trust Co., supra, 339 U.S. at 314, 70 S.Ct. at 657. Furthermore, this is not the only information the tenant receives regarding his ability to contest the landlord's application. The Notice of Conference sent to each tenant states that the parties may be represented by counsel and may bring witnesses and written evidence to support their contentions. This announcement also informs the tenant that failure to appear at the conference "may be considered a default and may result in a determination based upon the evidence in the record." This information, along with the initial Notice and the accompanying landlord's application, allows for "adequate preparation" for the conference. See Memphis Light, Gas & Water Div. v. Craft, supra, 436 U.S. at 14, 98 S.Ct. at 1562.
 
 
 33
 The tenant-plaintiffs in this action argue that the Notice is inadequate because it does not explain what the relevant issues are or describe what factors are important in making the eviction determination. Similarly, plaintiffs contend that the subsequent Notice of Conference does not cure this deficiency because it does not explain what contentions the witnesses and written evidence should support. Most tenants, therefore, simply present evidence of their own personal and financial hardships which, unfortunately, is largely irrelevant to the issue at hand. Finally, plaintiffs argue that even the Certificate of Eviction fails to inform the tenants of the grounds on which the Certificate can be challenged if a protest is filed with the Commissioner of the Department of Rent and Housing Maintenance ("Commissioner").
 
 
 34
 Undoubtedly, the notices challenged here are not models of clarity and draftsmanship and could be easily improved. That, however, is not the standard which this Court must apply. Due process demands that the tenants be informed of their right to object to the landlord's application and that they can adequately prepare for this opportunity. The initial Notice and Notice of Conference satisfy that demand because the relevant information can be gleaned from the documents, additional questions or misunderstandings may be resolved at the conferences, and the Notice of Conference indicates that inquiries may be made beforehand. Accordingly, I conclude that the notices involved in these proceedings do not violate constitutional requirements.
 
 2. Tenant Conferences
 
 35
 The court below rejected the plaintiffs' argument that they were constitutionally entitled to a hearing prior to eviction. As noted by the district court, a hearing may be granted on request or sua sponte in the discretion of the District Rent Director. Furthermore, the court stated:
 
 
 36
 the conferences before the hearing examiner, which are concededly always held, are adequate to satisfy due process in these proceedings. Tenants may, after all, request and obtain subpoenas for and/or produce witnesses, exhibits, affidavits (all of which are considered) inspect opposing papers and other materials and question opposing witnesses and/or present and file material in rebuttal.
 
 
 37
 489 F.Supp. at 573. I agree with Judge Kearse's view that the record evidences disputed issues of fact and does not fully support the district court's statements. As noted by the dissent, unanswered or disputed questions remain regarding the availability of a subpoena and a tenant's right to cross-examine witnesses, to inspect documents, and to file rebuttal material. Judge Kearse also questions whether the plaintiffs ever conceded that conferences were always held. As she points out, the record indicates that in the case of Fay Genaurd, the rent examiner met separately with the tenant and the landlord. I have less difficulty, however, accepting the proposition that a conference was made available for each of the tenant-plaintiffs in this action. The Commissioner's evidence supports his assertion that separate meetings were held with Mrs. Genaurd and her landlord because of confusion over dates that resulted from granting several adjournments to both parties. Mrs. Genaurd was granted an oral hearing when she filed a protest from the rent examiner's decision, but this hearing was never held because she has already vacated the apartment. The other tenants in this action did participate in some type of proceeding before the rent examiner. The question is not whether these proceedings constituted a conference per se, but whether they deprived the tenants of due process of law by failing to provide an adequate opportunity to challenge the bases of the landlord's claims.
 
 
 38
 The extensive record in this case describes the general procedures followed in each plaintiff's case. The district court, therefore, was hardly in the dark with respect to these proceedings. Of course, certain questions of fact remain unresolved, particularly those mentioned by Judge Kearse and reiterated above. And on a motion for summary judgment, all ambiguities and inferences must be resolved in favor of the party opposing the motion. Yet even construing these issues in the light most favorable to the plaintiffs' case, I find no unconstitutional infirmity with the procedures provided for in New York City's Regulations and implemented in the manner reflected by this record. For the reasons discussed below, I conclude that the procedures afforded the tenants in this action did not fall below what process was due.
 
 Due Process
 
 39
 The tenant-plaintiffs in this case, who have been forced to vacate their apartments under adverse circumstances and extreme hardship, raise many serious considerations in challenging the system that allows for their eviction. The fact remains, however, that the right at issue here the right to avoid eviction from a privately owned building is granted solely by statute and can thus be similarly limited. Cf. Kovarsky v. H. D. A., 31 N.Y.2d 184, 335 N.Y.S.2d 383, 286 N.E.2d 882 (1972) (New York City Rent Stabilization Law does not arbitrarily limit a more extensive right but rather creates only certain limited rights that tenants did not previously have). In Arnett v. Kennedy, 416 U.S. 134, 154, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1976), the Supreme Court stated, "where the grant of a substantive right is inextricably intertwined with the limitations on procedure which are to be employed in determining that right, a litigant ... must take the bitter with the sweet." Here, the tenant's statutorily defined right is not an abstract guarantee against eviction in the absence of the landlord's "good faith" need. Rather, it is a guarantee enforced and limited by the procedures the City has prescribed for determining whether the landlord in "good faith" seeks to recover the apartment for his own or his family's personal use. See id. at 152, 94 S.Ct. at 1643.
 
 
 40
 This does not mean, however, that this statutory right can be revoked in a manner inconsistent with due process requirements or that the City's procedures are immune from constitutional challenge. As subsequently explained by the Supreme Court, the Arnett decision "concluded that because the employee could only be discharged for cause, he had a property interest which was entitled to constitutional protection." Bishop v. Wood, 426 U.S. 341, 345 n.8, 96 S.Ct. 2074, 2078 n.8, 48 L.Ed.2d 684 (1976). Indeed, six members of the Arnett Court adhered to the proposition that "the adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms." Arnett v. Kennedy, supra, 416 U.S. at 134, 94 S.Ct. at 1634 (Powell, J., concurring in an opinion joined by Blackmun, J.); id. at 211, 94 S.Ct. at 1672 (Marshall, J., dissenting in an opinion joined by Douglas and Brennan, JJ.); see Bishop v. Wood, supra, 426 U.S. at 345 n.8, 96 S.Ct. at 2078 n.8. In this case, the tenant's right to an apartment can be terminated upon a showing that the landlord truly intends to use it for himself or his family. As described in Judge Kearse's dissent, because the landlord's freedom to evict the tenant is conditioned upon "good faith," the tenant must have an opportunity to contest this issue "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); see Memphis Light, Gas & Water Div. v. Craft, supra, 436 U.S. at 11, 98 S.Ct. at 1561 ("Because petitioners may terminate service only 'for cause,' respondents assert a 'legitimate claim of entitlement' within the protection of the Due Process Clause.") (footnote omitted). Upon reviewing the procedures followed here in light of the interests at stake, I have concluded that the Regulations provide for "such procedural protections as the particular situation demands." Mathews v. Eldridge, supra, 424 U.S. at 334, 96 S.Ct. at 902.
 
 
 41
 Three factors should be considered in identifying the "specific dictates" of due process: (1) the private interests affected; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, in light of the function performed and the fiscal or administrative burdens that additional safeguards would entail. Id. at 335, 96 S.Ct. at 903. In contrast to many other cases in which this tripartite analysis has been applied, the instant action involves two sets of private interests, the tenant's and the landlord's. The government is not trying to terminate a benefit or privilege but rather is seeking to make a limited factual finding that will determine the respective rights of each party. The tenants in this case are sympathetic plaintiffs who certainly have a substantial interest in retaining their apartments. But the interests of the landlords, who own the property and seek to recover the apartment for their own or their family's personal use, cannot be denigrated. See Lindsey v. Normet, 405 U.S. 56, 72-74, 92 S.Ct. 862, 873-874, 31 L.Ed.2d 36 (1972). Indeed, by providing that a landlord can evict a tenant under these circumstances, the legislature has weighed the interests at stake and struck what it perceived to be the appropriate balance. The court should not attempt to disturb the scale, which appears to be reasonably well-balanced, and the interests of the landlord and the tenant in these proceedings should be viewed as comparable.
 
 
 42
 The issue that must be determined by the rent examiner is whether the landlord, "in good faith," seeks to recover the apartment for his own use or for the use of his immediate family. Plaintiffs contend that the conferences deny due process in the following ways: ex parte evidence may be accepted and cross-examination denied, the parties are not allowed to see the examiner's recommended decision, and no transcript of the proceeding is made available to the parties or to the official who makes the ultimate eviction decision. I do not think, however, that the additional safeguards sought by the plaintiffs would so enhance the accuracy of the final determination as to significantly reduce the risk of an erroneous deprivation. Plaintiffs argue that the Keeler case bears out their contentions but I find that it actually supports the opposite view. Plaintiffs complain that vital evidence in the Keeler case an affidavit executed by the landlord's relative, a birth certificate establishing the family relationship, and a rent agency inspector's report were submitted without notice to the tenant and without providing the tenant with an opportunity to cross-examine witnesses. Because the landlord was requested by the examiner to provide the first two documents, plaintiffs claim that the landlord, in contrast to the tenants, was specifically advised of what evidence he needed to make out his case. Yet the fact that the examiner requested these documents and an inspection report, even though the tenants never challenged the validity of the landlord's claim, indicates that the examiner conducted a thorough and independent inquiry. The tenants raised no factual issues regarding the substance of the landlord's application; they did not contend that the apartment was sought for a non-relative or that the proposed occupant was not truly in need. The examiner, however, sought to verify these claims through documentary evidence to satisfy himself of the landlord's good faith. It is difficult to imagine what could have been gained by cross-examination or submission on notice in light of the narrow and easily verifiable factual inquiry made by the examiner.
 
 
 43
 This view is equally applicable to the other individual cases involved in this action. The record reveals that the documents submitted in other cases were generally doctors' statements or title papers that essentially spoke for themselves. The "witnesses," who were usually the parties, the proposed occupant, and an occasional attorney, were questioned by the examiner in an informal setting. Even accepting plaintiffs' contention that cross-examination is denied, I cannot agree that it is constitutionally required in these proceedings. "(D)ifferences in the origin and function of administrative agencies 'preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts.' " Mathews v. Eldridge, supra, 424 U.S. at 348, 96 S.Ct. at 909, quoting FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 143, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940). A full scale evidentiary hearing is neither a mandatory, nor even the most effective, method of decisionmaking under all circumstances. Id. Rather, the procedures should be tailored to fit "the capacities and circumstances of those who are to be heard." Goldberg v. Kelly, 397 U.S. 254, 268-69, 90 S.Ct. 1011, 1020-1021, 25 L.Ed.2d 287 (1970).
 
 
 44
 The dissent argues that "(s)ince good faith is a central issue, and often will require an assessment of a landlord's credibility, a decision on the basis of a paper record would seem to be 'a particularly inappropriate way' to decide whether or not a certificate should issue. Califano v. Yamasaki, 442 U.S. 682, 696-97 (99 S.Ct. 2545, 2555-2556, 61 L.Ed.2d 176) (1979)." As noted in the dissent, however, the Commissioner does not rely on the provision in the rent control law that states that a proceeding may be limited "to the filing of affidavits, or other written evidence and the filing of briefs." Title Y, § Y51-8.0. And while the plaintiffs point out that even informal conferences are not mandatory, it appears that some kind of conference was held with each of the tenant-plaintiffs in this action. Therefore, the issue, in my view, is not whether a purely paper record is sufficient but whether "good faith" can be accurately determined through the procedures followed in these cases. Upon reviewing the record, I conclude that these application and conference procedures, along with the availability of an administrative and judicial appeal, provide ample opportunity to assess the validity of the landlord's claim and his credibility.
 
 
 45
 In Califano v. Yamasaki, supra, the Supreme Court examined the procedures followed by the Secretary of the Department of Health, Education and Welfare in seeking to recover erroneous overpayments made to beneficiaries of certain insurance programs. After a recipient was notified that an overpayment had been made, he could request a reconsideration of that determination pursuant to section 204(a) of the Social Security Act. Or, the recipient could request that recoupment be waived in accordance with section 204(b) which provides that there shall be no recovery from "any person who is without fault if such adjustment would defeat the purpose of (the Act) or would be against equity and good conscience." The Supreme Court held that no oral hearing was required for a reconsideration request under section 204(a) because it involved "relatively straightforward matters of computation for which written review is ordinarily an adequate means to correct prior mistakes." 442 U.S. at 696, 99 S.Ct. at 2555. The Court also held, however, that written review was inadequate to make a waiver of determination under section 204(b). According to the Court, fault "depends on an evaluation of 'all pertinent circumstances' including the recipients' 'intelligence ... and physical and mental condition' as well as his good faith. 20 CFR § 404.507 (1978)." Id. at 697, 99 S.Ct. at 2555. In the Court's view, these factors cannot be "evaluated absent personal contact between the recipient and the person who decides his case" because "evaluating fault ... usually requires an assessment of the recipient's credibility, and written submissions are a particularly inappropriate way to distinguish a genuine hard luck story from a fabricated tall tale." Id.
 
 
 46
 Two main distinctions exist between the action at bar and the Yamasaki case upon which the plaintiffs and the dissent rely. First, although the "good faith" determination involved here is not merely a matter of computation, it is more susceptible to objective proof than the question of fault. The rent control law does not expressly define the meaning of "good faith." New York courts, however, have elaborated upon the issue. The New York cases establish that "(t)he administrative inquiry into good faith should be restricted to a search for the landlord's honest intention to gain possession for his own use." Berlinrut v. Leventhal, 43 A.D.2d 522, 525, 349 N.Y.S.2d 82, 83 (1st Dep't 1973); see Rosenbluth v. Finkelstein, 300 N.Y. 402, 405, 91 N.E.2d 581 (1949); McCabe v. Gabel, 22 A.D.2d 939, 255 N.Y.S.2d 993 (2d Dep't 1964). The landlord's good faith cannot be impeached on the ground that he could have occupied another apartment in the building that was not subject to the rent control law. Berlinrut v. Leventhal, supra; McCabe v. Gabel, supra. According to the record in this case, the tenant does not usually dispute the specifics of the landlord's claim that he or a member of his family intends to occupy the apartment. Furthermore, facts regarding ownership of the building or the family relationship are generally supported by independent documentary evidence. The conferences, therefore, do not appear to be a vehicle for weighing one party's word against another's and the landlord's credibility is not as critical an issue as it might first appear. Furthermore, the landlord's claims can always be subject to more stringent scrutiny by the examiner or the Commissioner if specific factual allegations are questioned or challenged. In contrast to the fault inquiry involved in Yamasaki, the rent examiner is not really attempting to distinguish between an actual "hard luck story" and a "fabricated tall tale."
 
 
 47
 The second way in which this case differs from Yamasaki is that decisions were not rendered against these tenant-plaintiffs without any personal contact by the examiner who made the initial recommendation. In contrast to Yamasaki, some type of conference was held in each of these cases and the eviction decision did not rest solely on a paper record. Conferences were also held for some of the protest proceedings initiated by tenant-plaintiffs. The Yamasaki Court approved of a procedure, instituted by the Secretary after the lawsuit was filed, whereby recipients were afforded "a short personal conference with an impartial employee of the Social Security Administration at which time the recipient present(ed) testimony and evidence and cross-examine(d) witnesses, and the administrative employee question(ed) the recipient." Id. The Court did not suggest, however, that cross-examination was necessary or required. Indeed, the issue-specific and flexible analysis employed by the Court confirms that every due process case should be carefully examined in light of the factual determination to be made, the evidentiary factors that must be reviewed, the characteristics of the parties, and the role played by the decision-maker. Consideration of these factors leads me to conclude that more formal procedures are not necessary in the case at bar to accurately assess the landlord's "good faith."
 
 
 48
 The plaintiffs claim that they were denied due process because they were not apprised of the examiner's recommended decision which must be approved and adopted by his superiors before an order granting eviction would be issued. I find this claim to be without merit. The government has no duty to inform parties of every internal recommendation when ample opportunities for appeal are provided. Furthermore, the additional burdens created by such a procedure outweigh any incidental benefit that might result on the tenants' behalf. The examiners fill out conference reports which include a summary of the evidence, a progress sheet, and their recommendations. It does not appear that a formal "decision" that could be distributed to the parties is ever drafted by the examiner and such an extra step does not appear warranted. Furthermore, if the parties were able to comment on the recommendation before it was adopted or rejected, they would, in effect, be given an additional chance to take an appeal. The rent control law provides that a protest can be filed after an order is issued and judicial review is also available. The tenant, therefore, is already provided with one administrative and one judicial appeal. The extra step requested would constitute an unnecessary burden.
 
 
 49
 The plaintiffs also contend that due process requires that the conferences be recorded stenographically or by tape. According to the plaintiffs, a complete record or transcript is necessary so that the ultimate decision-maker who is not present at the conference can know precisely what occurred. I disagree with this contention. As recently stated by the Second Circuit in Yaretsky v. Blum, 629 F.2d 817, 822 (2d Cir. 1980), "neither the Constitution nor New York law requires the administrative decision-maker in an appeal from a hearing officer recommendation to read (or listen to) the entire transcript (or tape recording) of the hearing before issuing an administratively final decision, whether favorable or adverse to the claimant." In Yaretsky, the Second Circuit distinguished and narrowly interpreted the two cases relied upon by the plaintiffs, Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) ("Morgan I ") and Ostrowski v. City of New York, 601 F.2d 629 (2d Cir. 1979), to the point where plaintiffs' reliance is misplaced. 629 F.2d at 823-25 & nn. 4, 6. And while plaintiffs quote the statement in Morgan I that "(t)he one who decides must hear," 298 U.S. at 481, 56 S.Ct. at 912. Judge Friendly has observed that "the life of this aspect of Morgan I was extremely brief. In Morgan IV (United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941)) Mr. Justice Frankfurter, writing for a Court unanimous on this point, took back most or all of what the first decision had given." National Nutritional Foods Assoc. v. FDA, 491 F.2d 1141, 1144 (2d Cir. 1974). Indeed, the Second Circuit has endorsed the view propounded by Professor Davis that:
 
 
 50
 Since the only purpose of sifting and analyzing of evidence by subordinates is to save the time of the deciding officers, this necessarily means that deciding officers may "consider and appraise" the evidence prepared by reading a summary or analysis prepared by subordinates. The Supreme Court thus did not require in the First Morgan case that deciding officers must read all the evidence or even that they must directly read any of it.
 
 
 51
 2 Davis, Administrative Law § 11.03 at 44-45 (1958) (footnotes omitted), quoted in Yaretsky v. Blum, supra, 629 F.2d at 823.
 
 
 52
 The plaintiffs' argument that a conference transcript is constitutionally required is, therefore, unfounded. Furthermore, any party that wishes to memorialize the conference can provide his own recording equipment. See Knowlson v. Joy, 78 Civ. 2685 (S.D.N.Y. Feb. 23, 1979) (not officially reported). It is true that this option is not likely to occur to an unrepresented tenant or may not be financially feasible. Yet it would be unduly burdensome to force the City to assume this chore when a transcript is neither constitutionally required nor likely to be relied upon in most cases. Except in rare cases, it does not appear that the interests of the parties or the decision-maker will be promoted by imposing this additional administrative and fiscal burden.
 
 Conclusion
 
 53
 While summary judgment should not be granted freely in actions raising important constitutional claims, the district court properly awarded judgment to the Commissioner in this case. No genuine factual disputes exist with respect to the notice provisions and the notice provided is not constitutionally inadequate. And although some unanswered questions may remain regarding the conference procedures, these issues are not material in that they fail to rise to constitutional proportions. Even viewing all unresolved issues in the light most favorable to the plaintiffs' claims, I find that the procedures conform to due process requirements. A full blown evidentiary hearing is not constitutionally required and the tenants are given an opportunity to be heard, to present evidence, and to appeal from an adverse decision. Furthermore, the examiner who renders the initial recommendation serves as an impartial arbiter who conducts a thorough and independent inquiry into a narrow factual issue. While "good faith" connotes credibility, this determination rests in large part on verifiable documentary evidence whose probative value can be measured in the absence of cross-examination.
 
 
 54
 The procedures followed here constitute an attempt to give all the parties a chance to air their views without creating a cumbersome and formal process leading to a trial-type hearing. Cf. Matter of Colton v. Berman, 21 N.Y.2d 322, 333, 287 N.Y.S.2d 647, 654-55, 234 N.E.2d 679, 684-685 (1967) (no evidentiary or quasi-judicial hearing required for valuation determination for "the avowed purpose of successive rent control statutes has always been to avoid protracted valuation proceedings ... in the light of the millions of rental units to be regulated and the burden such proceedings would place on landlords and tenants of small or low-rent properties."). Of course, if the tenant remains dissatisfied with the administrative determination or believes that an error was committed, an Article 78 proceeding may be instituted in New York Supreme Court. For those individual cases where an abuse of discretion occurs, an appeal to the state court is the appropriate remedy as opposed to the restructuring of administrative procedures by a federal court. See Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), while this latter avenue may have to be pursued in cases where it is the only viable recourse, the action at bar does not fall within that category. Accordingly, I vote to affirm the decision below.
 
 KEARSE, Circuit Judge (dissenting):
 
 55
 This appeal arises from two lawsuits[1] by tenants of rent controlled apartments in New York City against the Commissioner of the City's Office of Rent and Housing Maintenance ("Commissioner"), challenging the constitutional adequacy of the procedures under which the landlord of such an apartment may evict a tenant in order to reclaim use of the apartment. The district court granted summary judgment for the Commissioner against the plaintiff tenants ("Tenants") on the ground that the procedures prescribed and used are adequate. In my view the existence of disputes as to material facts made the granting of summary judgment inappropriate. Accordingly, I would reverse.
 
 
 56
 * The New York City Rent and Rehabilitation Law ("rent control law"), Title Y, §§ Y51-1.0 to Y51-18.0 of the Administrative Code of the City of New York, adopted pursuant to the local Emergency Housing Rent Control Act, N.Y.Unconsol.Laws § 8601 et. seq. (McKinney 1974), provides two means by which a landlord may evict a tenant from a rent controlled apartment. If the tenant has failed to pay the rent or has been guilty of other tenant misconduct,[2] the landlord may immediately commence an eviction proceeding in the Civil Court of the City of New York. § Y51-6.0(a); see N.Y. Real Prop. Acts, § 701 et seq. (McKinney 1979). In order to evict for a reason other than nonpayment of rent or tenant misconduct, a landlord must obtain from the city rent control agency a certificate of eviction ("Certificate"), which will permit him to proceed in Civil Court. Once the Certificate is obtained, no attack by the tenant on its merits is permitted in court. It is the procedure involved in obtaining the Certificate that is challenged in the present case.
 
 
 57
 The rent control law provides in pertinent part as follows:
 
 
 58
 The city rent agency shall issue such an order (granting a Certificate) whenever it finds that:
 
 
 59
 (1) The landlord seeks in good faith to recover possession of a housing accommodation because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his immediate family; provided, however, that where the housing accommodation is located in a building containing twelve or less housing accommodations and the landlord does not reside in the building and the landlord seeks in good faith to recover possession for his own personal use and occupancy, an immediate and compelling necessity need not to be established; ....
 
 
 60
 § Y51-6.0(b)[3] This general statutory scheme is the subject of New York City Rent and Eviction Regulations ("Regulations"). The Tenants contend that the procedures as they have actually developed through regulation and practice involve four levels of bureaucracy: (1) a "Rent Examiner" will review the landlord's application for a Certificate, may collect such evidence as he deems necessary by seeking additional documentation or by holding an informal conference or a trial-type hearing, and will then make a recommendation to (2) the District Rent Director, who makes the decision whether or not to grant the Certificate; the losing party may then file a protest with the office of the Commissioner, which is evaluated by (3) a "protest attorney" who reviews the record and may collect such additional evidence as he deems necessary, and sends proposed findings and an order to (4) the Commissioner, who has no knowledge of any particular grievance unless he is personally contacted by one of the parties. Following the Commissioner's decision on the protest, the aggrieved party may seek judicial review in an Article 78 proceeding in New York Supreme Court. Regulations § 102; N.Y.Unconsol.Laws § 8608 (McKinney).
 
 
 61
 Plaintiffs claim that the procedures for determination of the landlord's entitlement to a Certificate, both as written and as applied, deprive them of due process. They contend, inter alia, that the notice initially given to a tenant is inadequate to disclose the issues involved; that the Rent Examiner sometimes makes his recommendations on the basis of ex parte presentations; that no right to subpoena witnesses is recognized; that no right to cross examine the landlord is assured; that trial-type hearings are never held; that although a conference between landlord and tenant is usually held by the Rent Examiner, no transcript is made and the Examiner's report, consisting of his notes as to what he regards as relevant statements, is not available to the parties prior to the District Rent Director's acting on it.
 
 
 62
 Following commencement of the present lawsuits, plaintiffs moved for a preliminary injunction against eviction pending trial of any disputed issues of fact.[4] While that motion was sub judice plaintiffs conducted discovery of the rent control agency, including depositions of the Commissioner and certain members of his staff. Plaintiffs then moved for summary judgment, relying in part on deposition testimony as to the actual practices in the agency.
 
 
 63
 The district court determined that plaintiffs were not entitled to summary judgment and that, instead, the Commissioner was entitled to judgment as a matter of law. After reviewing the statutory provisions, the regulations, and the submissions of the parties, the court found, inter alia, that the notice provided is adequate; that adequate conferences are always held, with the tenants having the right to obtain subpoenas, question witnesses and inspect any documentary evidence; and that there is little need for a recording or transcript of the conference.
 
 II
 
 64
 The requirements for granting summary judgment are well established. There must be "no genuine issue as to any material fact," and a party must be "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is a harsh remedy which should be reserved for cases in which the requirements of the Rule are clearly satisfied. Flli Moretti Cereali v. Continental Grain Co., 563 F.2d 563, 565 (2d Cir. 1977). See Heyman v. Commerce & Industry Insurance Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). A court should resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment may be granted. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).
 
 
 65
 In the present case plaintiffs moved for summary judgment. Their contention that there were no issues of material fact to prevent entry of judgment in their favor, however, did not bar them from asserting the existence of issues of fact sufficient to prevent entry of judgment as a matter of law against them. Walling v. Richmond Screw Anchor Co., 154 F.2d 780, 784 (2d Cir.), cert. denied, 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640 (1946). Thus, in assessing plaintiffs' motion, the court was required to resolve all ambiguities and draw all legitimate inferences against the plaintiffs. But it could not then use those unfavorable resolutions and inferences to justify entry of judgment against plaintiffs as a matter of law. In order to determine whether the Commissioner is entitled to judgment as a matter of law, any disputes as to material facts must be resolved in favor of the Tenants.
 
 A. The Substantive Framework
 
 66
 At the outset, a brief overview of the substance of plaintiffs' claim is necessary in order to assess the materiality of the facts that plaintiffs contend are in dispute. The question of eviction from a rent controlled building is not a dispute between the tenant and a governmental agency; it is a dispute between private persons, with a governmental agency as the arbiter. The rights of a tenant to prevent eviction are given by the rent control statute, and those rights exist only to the extent that they are so given. Cf. Kovarsky v. H.D.A., 31 N.Y.2d 184, 335 N.Y.S.2d 383, 286 N.E.2d 882 (1972). To the extent that the rights are given, the tenants cannot, consistently with principles of due process, be deprived of them without "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), quoting from Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 11-12, 98 S.Ct. 1554, 1561-1562, 56 L.Ed.2d 30 (1978); Arnett v. Kennedy, 416 U.S. 134, 166-67, 94 S.Ct. 1633, 1650-1651, 40 L.Ed.2d 15 (1974) (Powell, J., concurring); id. at 177-78, 185, 94 S.Ct. at 1655-1658, 1659 (White, J. concurring and dissenting); id. at 211, 94 S.Ct. 1672 (Marshall, J., dissenting). Plaintiffs contend that due process entitles them to a trial-type hearing with all its common appurtenances. The Commissioner appears to concede that the tenants are entitled to some opportunity to be heard, but contends that the tenants' right to due process are satisfied by the conference procedures.
 
 
 67
 Without attempting to decide at this point precisely what kind of opportunity due process requires, it must be recognized that the portion of the statute here in question allows an eviction principally when the landlord "in good faith" seeks to recover the apartment for his own personal use and occupancy, or for the use and occupancy of his immediate family because of immediate and compelling necessity. Thus the statute conditions the right of the landlord to evict not on the circumstances of the tenant, but on the "good faith" intentions of the landlord.[5] Since good faith is a central issue, and often will require an assessment of a landlord's credibility,[6] a decision on the basis of a paper record would seem to be "a particularly inappropriate way" to decide whether or not a certificate should issue.[7] Califano v. Yamasaki, 442 U.S. 682, 696-97, 99 S.Ct. 2545, 2555-2556, 61 L.Ed.2d 176 (1979). I believe the court is required to assess whether the conference and/or hearing procedures provide rent control tenants with a meaningful opportunity to test the landlord's credibility in order to contest the issue of his good faith.
 
 B. The Issues of Material Fact
 
 68
 The overall problem I find in the district court's decision in the present case, is that it either ignored or decided adversely to plaintiffs certain factual disputes as to how the procedures actually operate, and their likely effect on the tenant's opportunity to challenge the landlord's good faith.[8] Without expressing a view as to the ultimate merits of plaintiffs' claims, I find factual disputes as to virtually all stages of the procedures in question.
 
 
 69
 First, it appears that there were material issues as to the adequacy of the notice given to a tenant by the rent control agency. The feature of the initial notice that I find immediately striking is the following boldface legend:
 
 
 70
 TO THE TENANT: THIS IS NOT AN EVICTION NOTICE. YOU ARE NOT
 
 REQUIRED TO MOVE UNTIL ORDERED BY A COURT
 
 71
 It does not appear that either this notice or the Notice of Conference which follows it informs the tenant that in order to avoid eviction he must successfully contest the issuance of a Certificate at the administrative level, and he will not be allowed to address the merits of the proposed eviction in court. Plaintiffs contend that tenants do not realize the significance of the notices they receive from the agency. They contend for example, that most tenants are not represented at the agency conferences; the Commissioner denies this (Keeler 9(g) Statement P 30, and response).[9] Considering the Commissioner's characterization of the response of certain plaintiffs as a "token barren response", (response to Keeler 9(g) Statement PP 49, 50), it is entirely possible that the legend quoted above may lull many tenants into the false belief that the question of their eviction will be litigated in court, not in the administrative agency from which the notice was sent. And it may well be that this misimpression is not adequately dispelled by the later conference notice stating that the tenant may be represented by counsel and may bring witnesses and written evidence, and that failure to appear "may result in a determination based upon the evidence in the record." So far as appears, nothing informs the tenant that the merits of his eviction will be conclusively determined before he gets to the court. It appears that a tenant may be similarly lulled into sleeping on his right to file a protest to the Commissioner on the District Rent Director's decision to issue a Certificate. The "Order Granting Certificate of Eviction," which states that such a protest may be filed, also states as follows:NOTICE TO TENANT: This certificate does not order you to move, but only authorizes court action to be brought for your eviction or removal. The issuance of this certificate does not affect your rights under any present rental agreement.
 
 
 72
 The district court found that the notices given were adequate. I find it difficult to believe that these questions were appropriately dealt with on summary judgment.
 
 
 73
 Turning to the actual conduct of conferences, my principal objections to the district court's decision result from his findings that
 
 
 74
 the conferences before the hearing examiner, which are concededly always held, are adequate to satisfy due process in these proceedings. Tenants may, after all, request and obtain subpoenas for and/or produce witnesses, exhibits, affidavits (all of which are considered) inspect opposing papers and other materials and question opposing witnesses and/or present and file material in rebuttal.
 
 
 75
 489 F.Supp. 568, 573. Contrary to this statement, I observe in the record many issues as to which material facts appear either to be in dispute or simply not to support these findings; these include (1) whether conferences are always held, (2) whether tenants may obtain subpoenas, (3) whether tenants are always permitted to inspect opposing papers, (4) whether tenants are always permitted to question opposing witnesses, and (5) whether tenants are always permitted to file rebuttal material.
 
 
 76
 (1) Are conferences always held? It is far from clear that, as the district court supposed, this has been conceded by plaintiffs. The Keeler plaintiffs' 9(g) Statement P 21 asserted that the conferences are not mandatory; the Commissioner denied this and went on to assert that "a conference/hearing is held in every eviction proceeding ...." Plaintiffs did not respond to the Commissioner's assertion; but they were not required to respond, since the Commissioner did not cross move for summary judgment with his own statement as to facts allegedly not in dispute.[10] Moreover, since plaintiffs elsewhere pointed to an instance when the Rent Examiner met only separately with the tenant and with the landlord (see "(3) and (4)" below), one would suppose that plaintiffs would not concede that conferences are always held.
 
 
 77
 (2) Does the tenant have the right to subpoena? Plaintiffs asserted that "(t)here are no procedures available for the issuance of administrative subpoenas when so requested by any party, although the agency has authority to issue such subpoenas." The Commissioner denied this. (Keeler 9(g) Statement P 26(i), and response.) On deposition, the Commissioner and his Senior Rent Examiner testified that they did not know of any procedure for procuring a subpoena.
 
 
 78
 (3) and (4) Are the tenants permitted to question opposing witnesses and inspect their documentary submissions? Plaintiffs have pointed to instances in which they were denied the opportunity to question the landlord: for example, when the landlord appeared at the conference and questioning by the tenant was curtailed (Ramos Affidavit), or when the landlord did not appear but sent his attorney in his stead (Genuard 9(g) Statement P 10), or when the Rent Examiner held separate conferences for the tenants and the landlord (Genuard 9(g) Statement P 7). As to two of these incidents, the Commissioner both denied that they occurred, and attempted to explain away the significance of their occurrence (see responses to Genuard 9(g) Statement PP 7, 10). Plaintiffs have pointed also to other ex parte collection of evidence by the Rent Examiner. They asserted, for example, that after a conference with the Keelers and their landlord, the Examiner, without giving notice to the Keelers, conducted an inspection of the premises and questioned the landlord's relative in the absence of the Keelers, and received from the landlord additional documents of which the Keelers were never given copies and never notified. The Commissioner both denied that these events occurred, and asserted that the Examiner proceeded in this way because the Keelers' opposition theretofore had been so weak (Keeler 9(g) Statement P 47, and response).
 
 
 79
 (5) Are the tenants permitted to file rebuttal material? The fair inference from the proffered fact that the tenants are not always notified of materials filed against them is that they do not always have the opportunity for rebuttal.
 
 
 80
 Finally, the district court's conclusion that there is little need for a recording or transcript of the conference also seems a premature finding of fact. For example, one plaintiff asserted that at the conference she had challenged the landlord's good faith need of her apartment on the grounds that there was already a vacant apartment in the building that the landlord could use instead of evicting her; there was no mention of any alleged vacancy in the Rent Examiner's report. (Ramos Affidavit.) The combination of no transcript and an incomplete report may be highly significant, especially if the Examiner's report is not available to the parties for review prior to the District Rent Director's decision. Is it available? Plaintiffs say it is not; the Commissioner says it is (Keeler 9(g) Statement P 26(j), and response). The deposition testimony of the Senior Rent Examiner supports plaintiffs' assertion.
 
 
 81
 On the basis of these and other material facts that the record reveals are in dispute I conclude that the Commissioner was not entitled to judgment as a matter of law. Consequently I would reverse the granting of summary judgment and remand for trial.
 
 
 
 *
 Honorable Charles H. Tenney, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Two cases were brought against Daniel W. Joy individually and as Deputy Commissioner, (1) by Jack Keeler, et al. in the Eastern District of New York and (2) by Fay Genuard et al. in the Southern District of New York. The Genuard case was transferred to Judge Platt in the Eastern District and a single opinion (489 F.Supp. 568) was delivered and a single judgment entered thereon dismissing plaintiffs' complaints. From this judgment the respective plaintiffs appeal
 
 
 [1]
 See majority opinion, footnote 1 ante
 
 
 [2]
 Misconduct includes such acts as permitting a nuisance, occupying the apartment illegally, and refusing unreasonably to allow the landlord access to the apartment
 
 
 [3]
 The other circumstances in which § Y51-6.0(b) provides that a Certificate shall be issued, which are not directly involved in this appeal, are as follows:
 (2) The landlord seeks in good faith to recover possession of a housing accommodation for which the tenant's lease or other rental agreement has expired or otherwise terminated, and at the time of termination the occupants of the housing accommodation are subtenants or other persons who occupied under a rental agreement with the tenant, and no part of the accommodation is used by the tenant as his dwelling; or
 (3) The landlord seeks in good faith to recover possession of a housing accommodation for the immediate purpose of substantially altering or remodeling it, provided that the landlord shall have secured such approval therefor as is required by law and the city rent agency determines that the issuance of the order granting the certificate of eviction is not inconsistent with the purpose of this title; or
 (4) The landlord seeks in good faith to recover possession of housing accommodations for the immediate purpose of demolishing them, and the city rent agency determines that such demolition is to be effected for the purpose of constructing a new building, provided that:
 (a) If the purpose of such demolition is to construct a new building containing housing accommodations, no certificate of eviction shall be granted under this paragraph (4) unless such agency determines that such new building will contain at least twenty per centum more housing accommodations consisting of self-contained family units (as defined by regulations issued by such agency, with due regard for the shortage of housing accommodations suitable for family occupancy and for the purposes of this title in relation thereto) than are contained in the structure to be demolished; except, however, that where as a result of conditions detrimental to life or health of the tenants, violations have been placed upon the structure containing the housing accommodations by any agency of the city having jurisdiction over such matters and the cost of removing such violations would be substantially equal to or would exceed the assessed valuation of the structure, the new building shall only be required to make provision for a greater number of housing accommodations consisting of self-contained family units (as so defined by regulation) than are contained in the structure to be demolished; and
 (b) The city rent agency shall, by regulation, as a condition to the granting of certificates of eviction under this paragraph (4), require the relocation of the tenants in other suitable accommodations, provided that the city rent agency may, by regulation, authorize the granting of such certificates as to any tenants or classes of tenants without such requirement of relocation, where such exemption will not result in hardship to such tenants or classes of tenants and will not be inconsistent with the purposes of this title; and
 (c) The city rent agency may, by regulation, in order to carry out the purposes of this title, impose additional conditions to the granting of certificates of eviction under this paragraph (4), including, but not limited to, the payment of stipends to the tenant by the landlord in such amounts and subject to such variations and classifications as such agency may determine to be reasonably necessary; and
 (d) No certificate of eviction shall be issued pursuant to this paragraph (4) unless the landlord shall have secured such approval as is required by law for the construction sought to be effected, and the city rent agency determines that the issuance of such certificate is not inconsistent with the purpose of this title.
 
 
 [4]
 Plaintiffs also sought class certification pursuant to Fed.R.Civ.P. 23 to permit them to represent all other tenants similarly situated
 
 
 [5]
 Plaintiffs have proffered the affidavits of a housing policy consultant and a social scientist and referred extensively to a report prepared for the Office of Rent and Housing Maintenance entitled "Rental Housing in the City of New York, Supply and Condition 1975-1978" (January 1979). These sources are the basis of plaintiffs' many assertions as to the rent control tenants' age and financial condition and the emotional hardships they would undergo if forced to relocate. The limited rights granted by the rent control law do not appear to turn on these factors
 
 
 [6]
 I note, in passing, that the Commissioner has denied plaintiffs' assertion that
 (w)hether a landlord is entitled to a Certificate of Eviction inevitably involves a determination of factual as well as legal issues. The factual issues include issues of the credibility, and intentions of the landlord.
 (Keeler plaintiffs' statement pursuant to Rule 9(g). P 16 (see note 9 infra )). This denial may bespeak a constricted view of the rights granted by the statute and suggest a tolerance for procedures that may be inadequate to protect those rights.
 
 
 [7]
 In assessing the adequacy of the procedures for issuance of the Certificate on the basis of the landlord's good faith personal or family needs, therefore, little reliance should be placed on the provision of § Y51-8.0 that "any proceedings under this section may be limited by the city agency to the filing of affidavits, or other written evidence and the filing of briefs." It does not appear that the Commissioner places great reliance on this section. Certainly he asserts that face-to-face confrontations are always held (see Part B infra )
 On the other hand, the meaning of "good faith" in subparagraph (2) of § Y51-6.0(b), see note 3 supra, is not apparent. No particular purpose is required of the landlord, and all of the factors mentioned there appear to relate to prior acts of the tenant and to be capable of objective determination. A landlord's application under subparagraph (2) would be far less dependent on his credibility and thus be more susceptible to a decision on the basis of a paper record.
 
 
 [8]
 In addition, the court appears to have drawn unwarranted inferences with respect to the procedural provisions as written, reading certain permissive provisions as mandatory. For example, the court quoted Regulation § 97 in part as follows:
 Within a reasonable time after the filing of the protest and answers, if any, the Commissioner may:
 f. Grant or order a hearing,
 (emphasis in district court opinion), and concluded that "the regulations provide for a hearing on request of either party...." 489 F.Supp. at 574; see also id. at 572. The provision that the Commissioner "may ... grant a hearing" does not mean that he must do so if a party requests.
 
 
 [9]
 Rule 9(g) of the General Rules of the United States District Court for the Southern and Eastern Districts of New York requires that a notice of motion for summary judgment be accompanied by a "short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." The papers opposing the motion must include a statement of the material facts allegedly in dispute. Assertions of fact in the moving party's 9(g) Statement that are not controverted by the opposing party's 9(g) Statement are deemed admitted. Here, separate statements pursuant to Rule 9(g) were filed by the plaintiffs in the Keeler and Genuard actions
 
 
 [10]
 A cross motion is not, of course, necessary in order to entitle the nonmoving party to summary judgment in his favor, assuming the undisputed facts so warrant. Lowenschuss v. Kane, 520 F.2d 255, 261 (2d Cir. 1975)