## (August 24, 1981)

■ BANK OF NEW YORK, Appellant, v TRIANGLE MEAT & PROVISIONS CORP. et al., Respondents. — On the court's own motion, its decision and order, both dated June 8, 1981 (82 AD2d 815), are recalled and vacated, and the following substituted decision is rendered. Appeal by the Bank of New York (hereinafter the bank) from an order of the Supreme Court, Westchester County (Cerrato, J.), dated July 9, 1980, *nunc pro tunc* as of April 26, 1979, which, *inter alia,* denied its motion to impound chattels scheduled for a Sheriff's sale. Order modified by deleting the third decretal paragraph and substituting therefor a provision directing Greenwood Packing Corp. (hereinafter Greenwood) to deposit the proceeds of the sale, which were previously paid over to it, with the Sheriff of Westchester County and that those proceeds be retained by the Sheriff and held by him in an interest-bearing account pending further proceedings in this matter. As so modified, order affirmed, without costs or disbursements, and matter remitted to Special Term for further proceedings in accordance herewith. Greenwood shall deposit the proceeds with the Sheriff within 10 days after service upon it of a copy of the order to be made hereon, with notice of entry. The instant matter has a long and confused procedural history. From the record before us, it appears that the bank had a number of transactions with defendant Triangle Meat & Provisions Corp. (hereinafter Triangle) and had taken security interests in Triangle, with filings in Westchester County as late as 1978. Triangle apparently sold meat to a variety of institutions in Westchester County and purchased supplies from a number of purveyors. One of those purveyors is the respondent Greenwood. Between December, 1977 and February, 1978, Triangle fell into arrears in payments to Greenwood. Greenwood brought suit against Triangle in Orange County by service of a summons on March 15, 1978. During the same period, the bank also apparently encountered difficulties in collecting from Triangle so, pursuant to its security agreements, the bank took possession of the stock of Triangle. By agreement dated April 5, 1978, the bank sold the stock to five individuals, one of whom had been a former principal of Triangle. The five were to pay a down payment and to pay 25% of the net profit of Triangle for Triangle's next five fiscal years (up to a specified maximum amount). The bank also sold certain fixtures of Triangle to the five buyers, arranged credit facilities and took a security interest in Triangle's assets. The security agreement was dated April 6, 1978, and was filed April 27, 1978 in Westchester County. The bank was represented by Kleinbaum & Miller — apparently Edward R. Miller, the same attorney who now represents the bank on this appeal. The bank's agreement to sell Triangle stock provided, in part, that the bank would be entitled to any money collected from Triangle's existing accounts receivable. As to Triangle's outstanding accounts payable, the agreement provided that "Triangle shall further deliver to The Bank for handling after the closing of this transaction all pre-existing claims of Triangle's creditors and The Bank will use its best efforts to take such actions as it deems advisable or necessary within its sole discretion to compromise and satisfy such claims." At a time unspecified, the bank offered those creditors 15¢ on the

dollar; the offer was later increased to 25¢. Greenwood was apparently the sole holdout, choosing instead to bring the afore-mentioned suit against Triangle in Orange County. At a date not apparent from the record, Triangle filed a notice of appearance in Greenwood's Orange County suit. Triangle's attorney was Edwin R. Miller. In due course, Greenwood moved for summary judgment, and Triangle did not oppose. Judgment was granted August 8 and entered August 17, 1978. Greenwood's efforts at collection were unsuccessful, and execution papers were eventually served on the Sheriff of Westchester County, who locked the doors and noticed a sale of Triangle's property. There is some question as to the premises involved since Triangle's address appears to have been 976 McLean Avenue, Yonkers, but it apparently held an interest of some sort at 980 McLean Avenue, Yonkers. On April 2, 1979 Triangle obtained an order to show cause in the Orange County suit to restrain the Westchester County Sheriff from locking up and selling its property, alleging that the bank had a security interest senior to Greenwood's interest. The order to show cause, which contained a temporary restraining order, was returnable April 9. The bank submitted an affidavit in support of the order to show cause, notarized by Edward R. Miller. On April 9, the Orange County court vacated the restraining order unless an undertaking of $36,000 was posted by noon on April 10, 1979. No such undertaking was posted. On April 10, 1979 the bank wrote Triangle to demand full payment of all amounts outstanding, as permitted under various agreements. Triangle had apparently fallen into arrears under its new owners when four of its orders (from hotels in Las Vegas, Nevada) had failed to materialize. The Sheriff's notice of sale, dated April 18, 1979, set down the sale for April 26, 1979. On April 25, 1979 the bank obtained an order to show cause in Westchester County (returnable the following day) in what purports to be a suit by the bank against Triangle — the matter currently before this court. The order to show cause was brought under CPLR 7103 to impound chattels (presumably Triangle's assets and fixtures) in the hands of the Sheriff. Neither Greenwood nor the Sheriff was named as a party defendant in this new action, but the order to show cause provided for service on Greenwood's attorney and the Westchester County Attorney. The bank was represented by Mr. Miller. Apparently no summons or complaint has been served upon Triangle or anyone else. On April 26, 1979, the bank, Greenwood and the Sheriff appeared and were heard in regard to the order to show cause; apparently no one entered a limited appearance at the argument. The court refused to enjoin the Sheriff's sale and ordered it to proceed, with the proceeds of the sale (less appropriate Sheriff's fees, costs and disbursements) to be paid to Greenwood. The decision was rendered from the Bench, and the sale took place. A proposed order was served for signature in May, 1979, but it was never signed by the court. On May 30, 1979 the bank moved in Westchester County to reargue, seeking to void the Sheriff's sale or to obtain the proceeds. A similar application was made in Orange County. In response to the motion to reargue, Greenwood argued that the Supreme Court, Westchester County, lacked jurisdiction and that the new points raised were inappropriate to such a motion. The motion for reargument was denied, with the court commenting that the procedural framework left much to be desired. At a date not specified in the record, probably in early 1980, the bank moved to amend the caption of this case, but the motion was denied. In March, 1980, the bank wrote to the court, noting that no order had ever been signed or entered on its CPLR 7103 application. After obtaining a copy of the transcript of the argument of April 26, 1979, the court agreed to sign and enter an order. Although signed July 9, 1980, it was made *nunc pro tunc* as of April 26, 1979. The bank then noticed the present appeal. The bank argues that its security interest must take precedence over Greenwood's judgment so that the proceeds from the Sheriff's

sale should be paid over to it. Greenwood argues that the bank's CPLR 7103 application was improper; it should have proceeded under CPLR 5239. Although a court may generally convert a proceeding improperly brought to the proper one, the prerequisite to such conversion is jurisdiction over the parties. Under CPLR 5239, and in general, when a party has not yet appeared in a proceeding, service is to be made on the party. Service under CPLR 5239 is to be made in the same manner as a motion and is thus governed by the provisions of CPLR 2103 (see 6 Weinstein-Korn-Miller, NY Civ Prac, par 5239.09, pp 52-728 — 52-729). Service was made on Greenwood's attorneys in the bank's instant action against the defendant Triangle. Greenwood also argues that the Orange County decision which refused to restrain the Sheriff's sale (unless a bond was posted) operates as collateral estoppel. On the merits, Greenwood argues that the alleged security interest is not valid because of the bank's ownership and sale of Triangle's stock and its agreement regarding Triangle's receivables and payables. Greenwood further argues that it is a third-party beneficiary to the agreement and that its claims had accrued prior to the bank's sale of Triangle stock on April 5, 1978. We do not reach the merits. Greenwood is correct that the bank's proceeding under CPLR 7103 (subd [b]) was improper since the so-called chattels were neither unique nor of a type for which proceeds of a sale would be inadequate. The more difficult question on this record is whether the improper proceeding could properly be converted to one under CPLR 5239. Initially Special Term did not have personal jurisdiction over Greenwood because service had not been made on Greenwood, but rather was made on Greenwood's counsel. However, Greenwood did appear. Since a personal jurisdiction defense may be waived, we conclude that the court had acquired jurisdiction over Greenwood, and we thus remit the matter for further proceedings under CPLR 5239. On remittitur, the court, in determining the proper disposition of the proceeds of the sale, should consider all the issues, including the questions of collateral estoppel, standing, and the true relationships among the bank, Triangle and the bank's counsel. Mollen, P. J., Hopkins, Weinstein and Thompson, JJ., concur.