OPINION OF THE COURT
Arthur D. Spatt, J.
This motion by the plaintiffs for an order extinguishing the alleged lien of Nationwide Mutual Insurance Company (Nationwide) in the sum of $125,813.08 “which Nationwide purports to hold against plaintiff Mae Strickland and which Nationwide seeks to assert in the above entitled actions”, is determined as set forth below.
BACKGROUND AND CONTENTIONS
These actions are for damages for personal injuries sustained by plaintiffs who were passengers in the automobile operated by defendant’s decedent and owned by plaintiff Samuel Quaterman which was involved in a single-car accident on September 4, 1978 in Jappa, Maryland. The total insurance coverage available to the plaintiffs in this accident is the sum of $400,000, which sum has been offered to the plaintiffs. The insurance coverage includes the total sum of $300,000 under a Liberty Mutual Insurance Company policy issued to decedent Charles Maniscalco and $100,000 under a Holyoke Mutual Insurance policy issued to plaintiff Samuel Quaterman, the owner of the car involved in the accident, who was a passenger in his own car at the time of the accident.
A review of the bills of particulars annexed to the motion papers reveals that all of the plaintiffs have sustained serious and allegedly permanent personal injuries.
Nationwide is the no-fault carrier for plaintiff Strickland and asserts a lien against said plaintiff for reimbursement of personal injury protection (PIP) benefits paid to her under said policy for solely economic losses.
Plaintiff Strickland contends that under New Jersey law, an injured person’s recovery for pain and suffering (noneconomic loss) may not be diminished by any subrogative claim of the insurance carrier paying the PIP benefits. Further, plaintiff asserts that any provision in the Nation *80 wide policy which purports to authorize the carrier to have such a subrogation lien would be unenforceable as repugnant to the provisions and intent of the New Jersey no-fault law.
The essence of plaintiffs’ argument is that the $400,000 being offered in full settlement of all the personal injury actions is, by reason of the very serious injuries involved, payment for pain and suffering only (noneconomic loss) and does not involve payment for economic losses. As stated by plaintiffs’ counsel, the proposed settlement involves “separate monies paid to plaintiffs for separate losses”.
Nationwide appears in this action by counsel to oppose plaintiffs’ application upon the following grounds: (1) the plaintiffs’ application is improper in form in that Nationwide is not and has never been a party to this action; has not had the benefit of discovery and a plenary hearing on the merits and therefore there has been a denial of due process; (2) there is a conflict of interest in that all the plaintiffs are represented by the same law firm, including plaintiff Samuel Quaterman who is the owner of the single vehicle involved in the accident, and whose liability insurance carrier has offered its full $100,000 policy in settlement of this case; (3) there are factual issues involving, inter alia, the existence of personal assets of the driver Maniscalco and the owner Quaterman, and the existence of excess insurance; (4) the stated amount of Nationwide’s lien is not $125,813.08 but, rather, the sum of $75,000, since the New Jersey Unsatisfied Judgment Fund has reimbursed Nationwide for all sums paid to plaintiff Strickland in excess of $75,000; (5) the New Jersey Unsatisfied Judgment Fund is a necessary party to the instant application; and (6) Nationwide has a legal lien.
FORM OF THE APPLICATION
The initial question facing the court is the contention by Nationwide that this application is improper in form. Nationwide asserts that it has never been properly joined as a party in these actions, and that a separate plenary action is required, in the following language:
“It is respectfully submitted that the said application is actually in the nature of a special proceeding seeking relief *81 against an insurance company (‘nationwide’) which has never been a party to the above-captioned action.
“Accordingly, the form of plaintiff’s application is improper in that it seeks to extinguish a valid contractual property right of the said insurance company without benefit of discovery proceedings and a plenary hearing on the merits. This, it is submitted, is a denial of due process.
“In effect, plaintiffs seek a summary judgment against a non-party whose only connection with the above captioned matter is the possession of a valid contractual lien adjudged to the potential recovery of one of the plaintiffs, mae STRICKLAND.”
The court notes that this “application” is in the form of a notice of motion bearing the two titles of the underlying personal injury actions. According to an affidavit of service annexed to the motion papers, the notice of motion and the supporting affirmation and exhibits were personally served on Nationwide in Liverpool, New York.[1]
The issue here raised is does the court have the right to proceed over a nonparty who is personally served with the motion papers with regard to the extinguishment of a lien by the nonparty, by way of this particular “motion” which is in the nature of a special proceeding, rather than a plenary action.
CPLR 103 (subd [c]) provides as follows: “(c) Improper form. If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution.”
It is clear and well established that once a court obtains jurisdiction of the parties, it must not dismiss matters merely because an inappropriate proceeding was commenced, provided the court can grant full relief to the parties. Since the inception of the CPLR, procedural defects in the initiation of civil judicial proceedings or in the *82 incorrect designation of civil judicial proceedings no longer permits dismissal. If this court has jurisdiction of the parties, and the pleadings state a ground for relief, the court is authorized to cure the defects as may be required to retain jurisdiction of the proceeding and to afford the parties a speedy determination of the issues presented. (See Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400; County of Nassau v Sterling, 59 AD2d 902; Matter of Gibor Assoc. v City of New York, 91 Misc 2d 915 [application to cancel a lien]; Scheer v City of Syracuse, 53 Misc 2d 80; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C103:3, at p 17.)
This rule as stated by Chief Judge Breitel in Matter of First Nat. City Bank v City of New York Fin. Admin. (36 NY2d 87, 94) is as follows: “Under CPLR 103 (subd. [c]), the courts are empowered and indeed directed to convert a civil judicial proceeding not brought in the proper form into one which would be in proper form, rather than to grant a dismissal, making whatever order is necessary for its proper prosecution (see, e.g., Phalen v. Theatrical Protective Union, 22 N Y 2d 34, 41-42, cert. den. 393 U. S. 1000).” (See, also, Matter of Kovarsky v Housing & Dev. Admin, of City of N. Y., 31 NY2d 184.)
“There is no procedural ‘no mans land’ and all proceedings must either be an action or a special proceeding” (Matter of Haroche v Leary, 64 Misc 2d 191, 194). This application is a civil judicial proceeding which appears to have been commenced in accordance with the equivalent requisite of CPLR 403. (Cf., for example, Long Is. Trust Co. v Rosenberg, 82 AD2d 591.) Further, there is no claim that the court lacked jurisdiction over the parties, and this court has the power to convert this application into a special proceeding, if necessary, to test the validity of Nationwide’s lien. (See Bank of New York v Triangle Meat & Provisions Corp., 82 AD2d 815; Matter of Adams v New York State Civ. Serv. Comm., 51 AD2d 668.)
Moreover, there is New York legislative intent in a statute that may be treated as somewhat analogous to this situation for the making of an application by notice of motion to determine the validity of a hospital lien. (See *83 Lien Law, § 189, subds 6-9; Baker v Sterling, 39 NY2d 397.)
Therefore, this is a proper application, and this court will entertain it on the merits. However, Nationwide is correct in its assertion that it should be afforded the benefit of discovery and a hearing on the merits, and these “due process” rights will be provided for later in this decision.
VALIDITY OF NATIONWIDE’S LIEN
Inasmuch as the subject insurance policy was issued in New Jersey to a New Jersey resident, the law of New Jersey applies to the question of the validity of the lien. (Nobile v Travelers Ind. Co. of Hartford, Conn., 4 NY2d 536; New Amsterdam Cas. Co. v Stecker, 3 NY2d 1.) As stated in Government Employees Ins. Co. v Sheerin (65 AD2d 10, 13), the applicable rulé governing this application is as follows: “It is obvious that New Jersey law should have been applied in this case. Where the action is one involving the rights and duties of the parties to an automobile insurance contract, the law of the State where the policy was written, as evidenced by the parties’ understanding as to the principal location of the insured risk, would be controlling, irrespective of the fact that the accident occurred in another State”.
The Nationwide no-fault insurance policy contains the following language, upon which terms Nationwide rests its claim of a lien:
“4. Reimbursement and Trust Agreement
“Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement:
“(a) The Company shall be entitled to the extent of such payment to the proceeds of any settlement of Judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the Company shall have a lien to the extent of such payment notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer, or a court having jurisdiction of the matter;
*84 “(b) Such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury;
“(c) Such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;” (emphasis supplied).
The lien provisions in the Nationwide policy are, by their terms, and, of course, by application of law, “subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act”.
The New Jersey law entitled “Compulsory Automobile Liability Insurance-No Fault Provisions” known as the “New Jersey Automobile Reparation Reform Act” (see NJ Stat Ann, § 39:6A-1), at section 39:6A-9, which is operative after December 31, 197^, provides, in part, as follows: “Any insurer paying benefits in accordance with the provisions of section 4 and section 10, personal injury protection coverage, regardless of fault, shall be subrogated to the rights of any party to whom it makes such payments, to the extent of such payments. Such subrogated insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation rights against only the insurer of any person liable for such damages in tort, provided, however, that such insurer may exercise its subrogation rights directly against any person required to have in effect the coverage required by this act and who failed to have such coverage in effect at the time of the accident.” (Emphasis supplied.)
This provision of law has been held to mean that subrogation rights other than against insurers, have been extinguished with respect to accidents occurring after December 31, 1974. (Pennsylvania Mfrs. Assn. Ins. Co. v Government Employees Ins. Co., 136 NJ Super 491, 498, affd 72 NJ 348.)
The leading New Jersey case in the field of the no-fault subrogation lien is Cirelli v Ohio Cas. Ins. Co. (72 NJ 380) which involved an injured New Jersey resident and his New Jersey no-fault carrier with regard to a pre-December 31, 1974 accident which occurred in New York. The court found that the reimbursement subrogation provisions in *85 the policy were repugnant to the provisions and intent of the New Jersey PIP law, but that plaintiff was obliged to reimburse the carrier for any medical expenses recovered in the third-party action. Held, that even in an out-of-State accident, the injured party’s recovery for pain, suffering, disability and other noneconomic losses which have not been received from the PIP carrier cannot be diminished. The Supreme Court of New Jersey spoke in the following language:
“Furthermore, the injured person might be able to maintain an action in the foreign jurisdiction for recovery of thé same expenses and losses for which he had been paid under PIP. Double recovery is, of course, contrary to the policy enunciated in the New Jersey No Fault Law. See N.J.S.A. 39:6A-12. There is no justification for depriving Ohio of its subrogation rights against Natelli (Boston) or the benefits of the reimbursement agreement with Cirelli, provided that Cirelli’s recovery for pain, suffering, disability and other losses (which have not been received from Ohio under PIP) from Natelli (Boston) is not diminished by Ohio’s subrogation or reimbursement. We are in full accord with the trial court that Ohio’s recovery may not be permitted to reduce those funds to which Cirelli is entitled in order to make him whole. 133 N.J. Super at 500. Accord, Iavicoli, supra at 118.
“The trial court invalidated the reimbursement agreement for all purposes. We agree with that holding insofar as New Jersey accidents involving insured New Jersey vehicles are concerned. But where an accident occurs outside the state between a New Jersey vehicle and a vehicle from another jurisdiction, the reimbursement and subrogation provisions are a safeguard against double recovery of medical and other expenses which have been provided and paid for under PIP. Furthermore, we hold that the insurance company’s subrogation rights against the out of state vehicle are valid. Invalidation of those rights would probably deprive the carrier of any subrogation rights. 3 Appleman, Insurance Law and Practice, § 1675, at 495-497 (1967). To the extent that such reimbursement and subrogation provisions do not conflict with the purposes of the No Fault Law, these policy conditions are valid and effec *86 tive. In all other respects, we agree with the decision below.” (72 NJ, pp 388-389 [emphasis supplied].)
This principle that there cannot be a subrogation lien for pain and suffering and other noneconomic losses was stated in Pennsylvania Mfrs. Assn. Ins. Co. v Government Employees Ins. Co. (supra, p 499) as follows: “In harmony with the overall legislative intent derived from the policy and provisions of the No Fault Law, it is our conclusion that the injured victim’s recovery for pain and suffering cannot be diminished by any subrogative claim of Pennsylvania arising out of the payment of PIP benefits. If the liability coverage of GEICO is exhausted by satisfaction of the claim of the injured person, not only is GEICO relieved of liability to Pennsylvania but Pennsylvania has no avenue of subrogation recovery in view of the following restriction on subrogation rights in N.J.S.A. 39:6A-9:”.
It is, therefore, concluded that there can be no subrogation lien by Nationwide for moneys received by the plaintiffs from the tort-feasor’s carriers for pain, suffering, disability and other noneconomic losses. There can be a valid subrogation lien by Nationwide for moneys paid to the plaintiffs for medical expenses, loss of earnings or other economic losses which have been provided for and paid by Nationwide to plaintiff Strickland under PIP, so as to prevent a “double recovery”.
From the papers submitted, this court cannot determine the nature or the type of losses included within the proposed payment to plaintiff Strickland by the tort-feasor’s carriers with regard to her share of the $400,000. In fact, the court has not been advised of the specific amount of the total $400,000 to be received by plaintiff Strickland. These factual matters require a plenary hearing. Specifically, the issues presented are: (1) the amount to be received by plaintiff Strickland, and (2) is the money to be received by plaintiff Strickland for pain, suffering, disability and other noneconomic losses only, or is some part of this money for reimbursement of medical expenses, loss of earnings or other noneconomic losses?
AS TO THE ALLEGED CONFLICT OF INTEREST OF PLAINTIFFS’ COUNSEL
Plaintiffs’ counsel states that there is no conflict between plaintiff Quaterman, the owner of the car, and the other *87 injured passengers who are all represented by him. He questions the relevancy of such representation with regard to the question of Nationwide’s lien.
Hypothetically, if the three “pure” passengers are represented by one attorney and plaintiff owner-passenger Quaterman was otherwise represented, the three “pure” passengers could have named Quaterman as a codefendant. If the case were tried and a verdict rendered against Quaterman in an amount in excess of his coverage, Quaterman would be personally liable for the amount of the excess judgment.[2] Again hypothetically, in the event that Quaterman has sufficient personal assets and/or income to pay all or part of such excess judgment, the additional money received by plaintiff Strickland may include the payment for economic losses previously reimbursed to said plaintiff by Nationwide PIP payments.
Therefore, the issue of a possible conflict of interest as to the representation of all plaintiffs by the same attorney is a relevant issue to be determined by this court. For obvious reasons, this issue will have to be resolved forthwith, and prior to discovery or the plenary hearings.
AS TO THE NEW JERSEY UNSATISFIED JUDGMENT FUND
The fact that the New Jersey Unsatisfied Judgment Fund (Fund) has reimbursed Nationwide in excess of $75,000 does not demonstrate that the Fund is a necessary party to this proceeding. The only lien here asserted is by Nationwide and, therefore, this application is concerned solely with the Nationwide lien. Moreover, Nationwide states that the correct amount of its lien is “the sum of $75,000.00 only”. Further, even if the Fund were to be considered a necessary party, it may not be possible to obtain jurisdiction over that entity. (See CPLR 1001, subd [b].)
CONCLUSION
This matter shall be resolved in the following manner:
*88 1. The issue of “conflict of interest” as to plaintiffs’ counsel shall first be determined at a hearing before me at Supreme Court, Queens County, Trial Term, Room 158, Borough Hall, Kew Gardens, New York, on October 7, 1981 at 9:00 a.m. sharp.
2. All parties shall be entitled to discovery by oral deposition and otherwise, to be completed in the month of October, 1981.
3. The plenary hearing is set down before me at Supreme Court, Nassau County, Trial Term, Part III, on November 10, 1981 at 9:00 a.m., subject to the disposition of the conflict of interest issue. The attorney for the plaintiffs shall, at least 10 days prior to said hearing, serve and file a note of issue and pay the required fee with the appropriate clerk.

. There is no claim that this court does not have jurisdiction with regard to Nationwide in this matter. The objection made is that this application was improper in form and denied Nationwide due process rights, such as a right of discovery and a hearing. (Cf. Matter of New York State Rest. Assn. v Board of Stds. & Appeals of State of N. Y., 19 AD2d 912.)

. Since plaintiffs are alleged to have a combined loss of earnings alone of more than $800,000 (less the unstated amount of the loss of earnings of plaintiff Quaterman), the recovery of an excess judgment may not be improbable.